1  LARRY L. BAUMBACH
   State Bar No. 50086
2  LAW OFFICES OF LARRY L. BAUMBACH
   686 Rio Lindo Avenue
3  Chico, CA 95926
   Telephone: 530-891-6222
4
   Attorney for PLAINTIFF
5
   DOUGLAS R. THORN
6  State Bar No. 133521
   LAW OFFICES OF DOUGLAS R. THORN
7  7601 Watson Way
   Citrus Heights, CA  95610
8  Telephone:  916-735-9910
9  Attorney for DEFENDANTS
10
11              IN THE UNITED STATES DISTRICT COURT
12            FOR THE EASTERN DISTRICT OF CALIFORNIA
13
14

| | |
|---|---|
| HAROLD ANTHONY FUNK,<br><br>                    Plaintiff,<br><br>        vs.<br><br>TOWN OF PARADISE; PARADISE POLICE DEPARTMENT CHIEF GERALD CARRIGAN; PARADISE POLICE DEPARTMENT OFFICER ROBERT PICKERING; PARADISE POLICE DEPARTMENT OFFICER TIMOTHY COOPER; DOES 1 through 100, Inclusive<br>,<br><br>                    Defendants. | Case No. 2:09-CV-01000-MCE-EFB (Temp)<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISAGREEMENT**<br><br>**Date:  May 11, 2011**<br>**Time: 10:00 a.m.**<br>**Dept: 24** |

-1-

# TABLE OF CONTENTS

Page

I.    FACTS.........................................................................................2

    A.    Plaintiff's Statement of Facts..................................................2
    B.    Defendant's Statement of Facts............................................. 3

II.    REQUIREMENT REGARDING CONFERRING..................................18

    A.    Plaintiff's Statement Regarding Conferring...............................18
    B.    Defendant's Statement Regarding Conferring...........................19

III.    DISCOVERY REQUESTS IN DISPUTE...........................................21

    A.    All Discovery Responses Were Untimely.................................21
          1.    Plaintiff's Contentions................................................21
          2.    Defendants' Contentions............................................22

    B.    Request for Production of Documents to Pickering and Cooper...23
          1.    Request No. 1.........................................................23
                a.    Plaintiff's Contention .......................................24
                b.    Defendants' Contention...............................…...25
          2.    Request Nos. 2, 3, 4, 5, 7, 9.....................................30
                a.    Plaintiff's Contention....................................…...31
                b.    Defendants' Contention....................................32
          3.    Request No 10.........................................................33
                a.    Plaintiff's Contention.......................................33
                b.    Defendants' Contention....................................34
          4.    Request Nos. 12, 13.................................................35
                a.    Plaintiff's Contention.......................................36
                b.    Defendants' Contention....................................37
          5.    Request No. 14........................................................37
                a.    Plaintiff's Contention.......................................38
                b.    Defendants' Contention....................................39
          6.    Request Nos. 15, 16, 17, 18......................................40
                a.    Plaintiff's Contention.......................................41
                b.    Defendants' Contention....................................42
          7.    Request Nos. 20, 21.................................................43
                a.    Plaintiff's Contention.......................................43
                b.    Defendants' Contention....................................44

Page

C.      Request for Production of Documents to Town of Paradise.........45
        1.      Request No. 1......................................................45
                a.      Plaintiff's Contention...........................................46
                b.      Defendant's Contention......................................47
        2.      Request Nos. 2, 3, 4, 5, 7, 9.........................................48
                a.      Plaintiff's Contention...........................................48
                b.      Defendant's Contention......................................50
        3.      Request No. 10.....................................................50
                a.      Plaintiff's Contention...........................................51
                b.      Defendant's Contention......................................52
        4.      Request No. 12.....................................................52
                a.      Plaintiff's Contention...........................................52
                b.      Defendant's Contention......................................53
        5.      Request Nos. 13, 14................................................54
                a.      Plaintiff's Contention...........................................55
                b.      Defendant's Contention......................................56
        6.      Request No. 15.....................................................56
                a.      Plaintiff's Contention...........................................57
                b.      Defendant's Contention......................................58
        7.      Request Nos. 17, 18, 19, 20........................................58
                a.      Plaintiff's Contention...........................................60
                b.      Defendant's Contention......................................61
        8.      Request No. 23.....................................................61
                a.      Plaintiff's Contention...........................................61
                b.      Defendant's Contention......................................63

D.      Interrogatories to Town of Paradise....................................63
        1.      Plaintiff's Contentions.............................................63
        2.      Defendant's Contentions..........................................63
        3.      Interrogatory No. 1................................................63
                a.      Plaintiff's Contention...........................................64
                b.      Defendant's Contention......................................64
        4.      Interrogatory No. 3................................................65
                a.      Plaintiff's Contention...........................................65
                b.      Defendant's Contention......................................66
        5.      Interrogatory No. 4................................................66
                a.      Plaintiff's Contention...........................................67
                b.      Defendant's Contention......................................67
        6.      Interrogatory No. 5................................................68
                a.      Plaintiff's Contention...........................................68
                b.      Defendant's Contention......................................69
        7.      Interrogatory No. 6................................................69
                a.      Plaintiff's Contention...........................................70
                b.      Defendant's Contention......................................71

Page

8.    Interrogatory Nos. 7, 8, 9, 10, 11, 12, 13.....................71
      a.       Plaintiff's Contention......................................74
      b.       Defendant's Contention....................................74

E.    Interrogatories to Pickering and Cooper.................................74
1.    Interrogatory No. 1.................................................74
      a.       Plaintiff's Contention......................................74
      b.       Defendants' Contention....................................75
2.    Interrogatory No. 2.................................................75
      a.       Plaintiff's Contention......................................76
      b.       Defendants' Contention....................................76
3.    Interrogatory No. 3.................................................76
      a.       Plaintiff's Contention......................................77
      b.       Defendants' Contention....................................77
4.    Interrogatory No. 4.................................................78
      a.       Plaintiff's Contention......................................78
      b.       Defendants' Contention....................................78
5.    Interrogatory Nos. 5 through 18..................................79
      a.       Plaintiff's Contention......................................83
      b.       Defendant's Contention....................................83

F.    Depositions of Defendant's Pickering and Cooper.................83
1.    Plaintiff's Contention...............................................83
2.    Defendants' Contention............................................85
3.    Deposition of Defendant Pickering.............................85
      a.       Page 18, Line 6 through Page 21, Line 9............85
               i.       Plaintiff's Contention.............................88
               ii.      Defendant's Contention..........................88
      b.       Page 21, Line 16 through Line 21....................90
               i.       Plaintiff's Contention.............................91
               ii.      Defendant's Contention..........................91
      c.       Page 22, Line 4 through Page 23, Line 1...........91
               i.       Plaintiff's Contention.............................92
               ii.      Defendant's Contention..........................92
      d.       Page 24, Line 18 through Line 24....................93
               i.       Plaintiff's Contention.............................93
               ii.      Defendant's Contention..........................93
      e.       Page 25, Line 14 through Line 23....................93
               i.       Plaintiff's Contention.............................93
               ii.      Defendant's Contention..........................94
      f.       Page 27, Line 3 through Line 5........................94
               i.       Plaintiff's Contention.............................94
               ii.      Defendant's Contention..........................94

Page

g.    Page 27, Line 7 through Line 16...........................94
       i.      Plaintiff's Contention...............................95
       ii.     Defendant's Contention...........................95
h.    Page 27, Line 24 through Page 28, Line 21............95
       i.      Plaintiff's Contention...............................96
       ii.     Defendant's Contention...........................96
i.     Page 29, Line 20 through Line 22.....................96
       i.      Plaintiff's Contention...............................97
       ii.     Defendant's Contention...........................97
j.     Page 32, Line 7 through Line 8...........................97
       i.      Plaintiff's Contention...............................97
       ii.     Defendant's Contention...........................97
k.    Page 33, Line 14 through Line 18........................97
       i.      Plaintiff's Contention...............................98
       ii.     Defendant's Contention...........................98
l.     Page 36, Line 22 through Page 38, Line 17............98
       i.      Plaintiff's Contention...............................99
       ii.     Defendant's Contention...........................100
m.   Page 49, Line 10 through Line 21......................100
       i.      Plaintiff's Contention...............................100
       ii.     Defendant's Contention...........................101
n.    Page 54, Line 8 through Line 14........................101
       i.      Plaintiff's Contention...............................101
       ii.     Defendant's Contention...........................101
o.    Page 58, Line 2 through Line 4...........................102
       i.      Plaintiff's Contention...............................102
       ii.     Defendant's Contention...........................102
p.    Page 58, Line 6 through Line 11........................102
       i.      Plaintiff's Contention...............................102
       ii.     Defendant's Contention...........................102
q.    Page 58, Line 18 through Line 22......................102
       i.      Plaintiff's Contention...............................103
       ii.     Defendant's Contention...........................103
r.     Page 59, Line 25 through Page 60, Line 21.........103
       i.      Plaintiff's Contention...............................104
       ii.     Defendant's Contention...........................104
s.    Page 61, Line 4 through Page 62, Line 24...........104
       i.      Plaintiff's Contention...............................106
       ii.     Defendant's Contention...........................106
t.     Page 65, Line 23 through Line 26......................106
       i.      Plaintiff's Contention...............................106
       ii.     Defendant's Contention...........................106

u.      Page 66, Line 7 through Line 10........................107
        i.       Plaintiff's Contention..............................107
        ii.      Defendant's Contention..........................107
v.      Page 66, Line 22 through Line 26.....................107
        i.       Plaintiff's Contention..............................107
        ii.      Defendant's Contention..........................108
w.      Page 67, Line 7 through Line 12.......................108
        i.       Plaintiff's Contention..............................108
        ii.      Defendant's Contention.........................108
x.      Page 67, Line 22 through Line 26.....................108
        i.       Plaintiff's Contention..............................109
        ii.      Defendant's Contention.........................109
y.      Page 68, Line 25 through Page 69, Line 2...........109
        i.       Plaintiff's Contention..............................109
        ii.      Defendant's Contention.........................109
z.      Page 69, Line 21 through Page 70, Line 8..........110
        i.       Plaintiff's Contention..............................110
        ii.      Defendant's Contention.........................110
aa.     Page 70, Line 20 through Line 22.....................110
        i.       Plaintiff's Contention..............................111
        ii.      Defendant's Contention.........................111
bb.     Page 71, Line 22 through Line 26.....................111
        i.       Plaintiff's Contention..............................111
        ii.      Defendant's Contention.........................112
cc.     Page 72, Line 8 through Line 14.......................112
        i.       Plaintiff's Contention..............................112
        ii.      Defendant's Contention.........................112
dd.     Page 72, Line 23 through Page 73, Line 2..........112
        i.       Plaintiff's Contention..............................113
        ii.      Defendant's Contention.........................113
ee.     Page 73, Line 3 through Page 74, Line 12..........113
        i.       Plaintiff's Contention..............................114
        ii.      Defendant's Contention.........................114
ff.     Page 74, Line 13 through Page 75, Line 4.........115
        i.       Plaintiff's Contention..............................115
        ii.      Defendant's Contention.........................115
gg.     Page 75, Line 5 through Line 9........................116
        i.       Plaintiff's Contention..............................116
        ii.      Defendant's Contention.........................116
hh.     Page 75, Line 18 through Line 26.....................116
        i.       Plaintiff's Contention..............................117
        ii.      Defendant's Contention.........................117

ii.    Page 76, Line 10 through Line 20.....................117
    i.    Plaintiff's Contention...............................117
    ii.    Defendant's Contention.........................118
jj.    Page 77, Line 11 through Page 80, Line 9.........118
    i.    Plaintiff's Contention............................120
    ii.    Defendant's Contention.........................120
kk.    Page 80, Line 11 through Page 81, Line 2..........120
    i.    Plaintiff's Contention..............................121
    ii.    Defendant's Contention.........................121
ll.    Page 81, Line 3 through Line 9.........................121
    i.    Plaintiff's Contention..............................122
    ii.    Defendant's Contention............................122
mm.    Page 81, Line 19 through Line 22.....................122
    i.    Plaintiff's Contention..............................122
    ii.    Defendant's Contention.........................122
nn.    Page 82, Line 2 through Line 19........................122
    i.    Plaintiff's Contention..............................123
    ii.    Defendant's Contention.........................123
oo.    Page 84, Line 4 through Line 24........................124
    i.    Plaintiff's Contention..............................124
    ii.    Defendant's Contention............................124
pp.    Page 85, Line 8 through Line 11........................125
    i.    Plaintiff's Contention..............................125
    ii.    Defendant's Contention............................125
qq.    Page 86, Line 8 through Line 17........................125
    i.    Plaintiff's Contention..............................125
    ii.    Defendant's Contention............................126
rr.    Page 87, Line 9 through Line 11........................126
    i.    Plaintiff's Contention..............................126
    ii.    Defendant's Contention.........................126
ss.    Page 89, Line 1 through Line 3.........................126
    i.    Plaintiff's Contention.............................126
    ii.    Defendant's Contention.........................127
tt.    Page 89, Line 7 through Line 13........................127
    i.    Plaintiff's Contention..............................127
    ii.    Defendant's Contention............................127
uu.    Page 92, Line 17 through Page 94, Line 24.........128
    i.    Plaintiff's Contention..............................129
    ii.    Defendant's Contention.........................130
vv.    Page 95, Line 23 through Page 96, Line 3..........130
    i.    Plaintiff's Contention..............................130
    ii.    Defendant's Contention.........................131

ww.    Page 96, Line 18 through Page 97, Line 8.........131
    i.      Plaintiff's Contention..............................131
    ii.     Defendant's Contention.........................132
xx.    Page 100, Line 22 through Line 24...................132
    i.      Plaintiff's Contention..............................132
    ii.     Defendant's Contention.........................132
yy.    Page 102, Line 8 through Line 24....................132
    i.      Plaintiff's Contention..............................133
    ii.     Defendant's Contention.........................133
zz.    Page 103, Line 24 through Line 26..................133
    i.      Plaintiff's Contention..............................134
    ii.     Defendants Contention............................134
aaa.   Page 106, Line 17 through Line 18..................134
    i.      Plaintiff's Contention..............................134
    ii.     Defendant's Contention.........................134
bbb.   Page 106, Line 23 through Page 107, Line 8......134
    i.      Plaintiff's Contention..............................135
    ii.     Defendant's Contention.........................135
ccc.   Page 107, Line 14 through Line 17..................135
    i.      Plaintiff's Contention..............................135
    ii.     Defendant's Contention.........................135
ddd.   Page 108, Line 14 through Page 109, Line 1....135
    i.      Plaintiff's Contention..............................136
    ii.     Defendant's Contention.........................136
eee.   Page 109, Line 20 through Page 110, Line 18...136
    i.      Plaintiff's Contention..............................137
    ii.     Defendant's Contention.........................137
fff.    Page 111, Line 2 through Line 5.....................137
    i.      Plaintiff's Contention..............................137
    ii.     Defendant's Contention.........................138
ggg.   Page 111, Line 8 through Line 10.....................138
    i.      Plaintiff's Contention..............................138
    ii.     Defendant's Contention.........................138
hhh.   Page 111, Line 15 through Page 112, Line 7........138
    i.      Plaintiff's Contention..............................139
    ii.     Defendant's Contention.........................139
iii.    Page 112, Line 12 through Page 113, Line 15......139
    i.      Plaintiff's Contention..............................140
    ii.     Defendant's Contention.........................141
jjj.    Page 113, Line 26 through P age 114, Line 4......141
    i.      Plaintiff's Contention..............................141
    ii.     Defendant's Contention.........................141

kkk.   Page 116, Line 26 through Page 117, Line 2......141
        i.      Plaintiff's Contention..............................141
        ii.     Defendant's Contention.........................142
lll.   Page 121, Line 22 through Page 122, Line 23......142
        i.      Plaintiff's Contention.............................142
        ii.     Defendant's Contention.........................143

G.   Deposition of Defendant Cooper...........................................143
     1.   Page 11, Line 19 through Page 13, Line 10..................143
          a.      Plaintiff's Contention..........................................144
          b.      Defendant's Contention....................................144
     2.   Page 13, Line 19 through Page 15, Line 16..................144
          a.      Plaintiff's Contention..........................................146
          b.      Defendant's Contention....................................146
     3.   Page 35, Line 2 through Line 24..................................147
          a.      Plaintiff's Contention..........................................147
          b.      Defendant's Contention....................................148
     4.   Page 37, Line 5 through Line 6....................................148
          a.      Plaintiff's Contention..........................................148
          b.      Defendant's Contention....................................148
     5.   Page 39, Line 3 through Page 40, Line 18.................149
          a.      Plaintiff's Contention..........................................150
          b.      Defendant's Contention....................................150
     6.   Page 41, Line 4 through Line 9....................................150
          a.      Plaintiff's Contention..........................................150
          b.      Defendant's Contention....................................150
     7.   Page 41, Line 14 through Line 20..............................151
          a.      Plaintiff's Contention..........................................151
          b.      Defendant's Contention....................................151
     8.   Page 42, Line 3 through Line 22..................................151
          a.      Plaintiff's Contention..........................................152
          b.      Defendant's Contention....................................152
     9.   Page 43, Line 5 through Line 6....................................152
          a.      Plaintiff's Contention..........................................152
          b.      Defendant's Contention....................................152
     10.  Page 44, Line 19 through Page 45, Line 9.................152
          a.      Plaintiff's Contention..........................................153
          b.      Defendant's Contention....................................153
     11.  Page 46, Line 3 through Line 6....................................154
          a.      Plaintiff's Contention..........................................154
          b.      Defendant's Contention....................................154
     12.  Page 46, Line 17 through Line 23..............................154
          a.      Plaintiff's Contention..........................................154
          b.      Defendant's Contention....................................154

13.  Page 49, Line 1 through Line 5....................................155
     a.      Plaintiff's Contention......................................155
     b.      Defendant's Contention..................................155
14.  Page 50, Line 10 through Line 21...............................155
     a.      Plaintiff's Contention......................................155
     b.      Defendant's Contention..................................155
15.  Page 51, Line 26 through Page 52, Line 19.................155
     a.      Plaintiff's Contention......................................156
     b.      Defendant's Contention..................................156
16.  Page 52, Line 24 through Page 54, Line 2....................156
     a.      Plaintiff's Contention......................................157
     b.      Defendant's Contention..................................157
17.  Page 55, Line 5 through Page 56, Line 10....................158
     a.      Plaintiff's Contention......................................158
     b.      Defendant's Contention..................................159
18.  Page 57, Line 2 through Line 5....................................159
     a.      Plaintiff's Contention......................................159
     b.      Defendant's Contention..................................159
19.  Page 58, Line 20 through Line 21...............................159
     a.      Plaintiff's Contention......................................159
     b.      Defendant's Contention..................................160
20.  Page 59, Line 21 through Page 64, Line 10..................160
     a.      Plaintiff's Contention......................................163
     b.      Defendant's Contention..................................164
21.  Page 65, Line 1 through Page 66, Line 2......................164
     a.      Plaintiff's Contention......................................165
     b.      Defendant's Contention..................................165
22.  Page 66, Line 19 through Page 68, Line 24..................165
     a.      Plaintiff's Contention......................................166
     b.      Defendant's Contention..................................167
23.  Page 69, Line 6 through Line 8....................................167
     a.      Plaintiff's Contention......................................167
     b.      Defendant's Contention..................................168
24.  Page 70, Line 18 through Page 71, Line 16..................168
     a.      Plaintiff's Contention......................................168
     b.      Defendant's Contention..................................169
25.  Page 72, Line 12 through Line 17...............................169
     a.      Plaintiff's Contention......................................169
     b.      Defendant's Contention..................................169
26.  Page 74, Line 7 through Line 12..................................169
     a.      Plaintiff's Contention......................................169
     b.      Defendant's Contention..................................170

**IV.**     **CONCLUSION**……………………………………………………**170**

      A.      Plaintiff's Statement …………………………………………………170
      B.      Defendants' Statement ……………………………………………..170

# I. FACTS

A. **Plaintiff's Statement of Facts**

On November 17, 2007 at approximately 10:30 p.m., 911 dispatch received a call regarding four juveniles on the side of Stratton's Market drawing graffiti. The caller described the juveniles as wearing dark hooded sweatshirts. The caller also stated that there was a lot of noise outside so he noticed them when he went outside to check on where the noise was coming from. Officers Rhymes, Pickering and Cooper responded to the call and made contact with three juveniles matching the description as given by the caller.

At the same time, plaintiff Funk was attending a party at Stratton's Market. Ruby Stratton, the owner of Stratton's Market, estimated there to be 150 to 200 people attending the party. Plaintiff Funk was wearing jeans, cowboy boots, a white, long-sleeved, button-up, collared shirt and a white cowboy hat. There was a disc jockey at the party who was playing music very loud. Plaintiff Funk needed to use the restroom but the restroom was occupied. He walked behind the Stratton Market's barn to relieve himself but upon arriving at the side of the barn saw a light shined towards him. Due to it being dark with no light on that side of the barn, Funk was unable to see who flashed the light towards him. Since there was someone out there, Funk decided to not urinate there and preceded to the restroom. He had a sudden urge to relieve his bowels and began to jog towards the restroom.

After making contact with the juveniles, Officer Pickering looked around the area when he observed Funk on the side of the barn. Officer Pickering shined his light at Funk who then began leaving the area. Officer Pickering yelled toward Funk who was approximately seventy-five feet away. Due to the noise from the loud music and the 150 to 200 people at the party, Funk did not hear Pickering and proceeded to the restroom. Officers Pickering and Cooper ran after Funk, charging into the closed bathroom door. Funk unlocked the door and the officers entered the bathroom and immediately began slamming Funk against the wall of the tiny bathroom and twisting his arm. Neither officer

1  identified himself to Funk. During the arm twisting by the officers, Funk cried out in pain

2  six times. During the struggle Funk defecated on himself and was never offered an

3  opportunity to clean himself. Funk was then arrested for public intoxication and resisting

4  arrest. The excessive twisting of Funk's arm resulted in a fracture to Funk's left elbow

5  with partial dislocation and tear of the ulnar collateral ligament.

6  **B. Defendants' Statement of Facts**

7  Defendants object that Plaintiff failed to identify the nature of the factual disputes in

8  issue to establish his right to discovery of the materials in question as mandated by Local

9  Rule 251(c)(2). Defendants will therefore undertake this extensive burden, as it is essential

10  to the resolution of these disputes.

11  <center>**Nature of the Case**</center>

12  This case arises from the arrest of a very inebriated Harold Funk at a closed

13  business during the late night hours of Saturday, November 17, 2007, after he fled from

14  officers called to the scene by 911 call of vandalism in progress with suspects outstanding

15  and resisted their efforts to take him into custody. As an initial matter, Defendants are

16  astonished that Plaintiff would advance his "statement of facts" to the Court. Fortunately for

17  Defendants, the Court, and all objective observers, there are two independent,

18  corroborating audio tapes of the entire incident that were captured by the two officers

19  involved in the pursuit and arrest of Mr. Funk. And there is audio tape of 911 call that

20  brought the officers to the scene, photographs (including those produced by Plaintiff), and

21  other scientific evidence that debunk Plaintiff's *fables* advanced to the Court here and

22  elsewhere in this case, including a booking interview sheet prepared by a disinterested

23  nurse employed by Butte County that documents Plaintiff's *admission that he was not*

24  *injured*. Moreover, the 911 caller did not describe four juveniles or suspects in dark hooded

25  sweatshirts, but indicated that there were four or five males – one of whom was wearing a

26  light grey sweater-type shirt and two who were wearing combination light/dark hooded

27  sweatshirts. The clothing for the other suspects was not given, and Mr. Funk was wearing a

28  combination of light/dark shirt and vest. There was not loud music playing "at the time" and

1  not 150-200 people at the party "at the time," and, even if there were, such "facts" are

2  completely irrelevant to a determination of the legal issues in this case since the officers did

3  not have the opportunity to investigate the nature of those alleged facts before Plaintiff fled

4  before he could be stopped and questioned. "The 'reasonableness' of a particular use of

5  force must be judged from the perspective of a reasonable officer on scene, rather than with

6  the 20/20 vision of hindsight."[1]

7              Furthermore, Plaintiff did not "arrive at the corner of the barn" before noticing

8  Officer Pickering's flashlight or "jog" to the bathroom when he fled from officers. He

9  previously testified under oath that he was already standing on the side of the barn when

10  the officer shined the flashlight at him.  Even his wife refutes his newest story –.  She can be

11  heard on tape, for example, asking Plaintiff, "Why would you run?" These are but a few

12  examples of Plaintiff's attempt to abuse the litigation process with false claims and

13  testimony, and, fortunately, the law bars him from taking positions in litigation that blatantly

14  contradict the audio tapes and photographic evidence in this case.[2]  In any event, given the

15  elements of the claims for relief alleged in the Complaint in this case, the qualified immunity

16  defense, and state of Plaintiff's discovery admissions, what follows are the relevant facts for

17  discovery purposes under Rule 26 and its relationship to the qualified immunity defense.

18  Plaintiff's bare allegations and contentions of wrongdoing are insufficient to impose broad-

19  reaching discovery obligations on Defendants because "[u]ntil the threshold immunity

20  question is resolved, discovery should not be allowed."[3]

21                                    **911 Call of Five Vandals at Closed Business**.

22        This case arises out of the arrest of Plaintiff Harold Funk during the late night hours

23  of Saturday, November 17, 2007, after he fled from officers who were called to the scene of

24  a closed business known as Stratton's Market to investigate 911 call put out by dispatcher

25

26  [1]  *Graham v. Connor*, 490 U.S. 386, 396 (1989).

27  [2] *Scott v. Harris*, 550 U.S. 372, 390-381 (2007).

28  [3] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

1   Jenny Jones as a large group of males, about 5 of them, wearing hooded sweatshirts in the
2   back of the closed business near the air conditioning unit vandalizing the property. Neither
3   the person who called 911 nor Dispatcher Jones described the suspects as juveniles
4   wearing dark hooded sweatshirts. The following facts are from the audio recordings made of
5   911 call and by officers at the scene, and from photographs and records after the arrest and
6   deposition testimony that is not subject to genuine or material dispute under applicable law.

7              **First Officer Arrives and Encounters Only Three Suspects**.

8         Defendant Cooper was the first officer to arrive on scene, and activated his personal
9   recording device before he arrived on scene to memorialize his actions and those he may
10  encounter – something a conspirator would *obviously* never record. When Officer Cooper
11  arrived on scene, he immediately encountered three male suspects in the back of the
12  business near the air conditioner – the whereabouts of the other suspects was unknown at
13  that time. He radioed dispatch and the other two officers on duty that night, Officers
14  Pickering and Rhymes, that he was "out with 3." Officer Cooper left his emergency lights
15  flashing as he exited his patrol vehicle to confront the suspects.

16        As Officer Cooper exits his patrol vehicle, he was intensely focused on the three male
17  suspects because his backup had not arrived and the suspects had not been searched for
18  weapons. As he began securing the scene and the evidence of vandalism in plain view
19  (spray paint and markers) he began questioning the three suspects, who turned out to be
20  teenagers, about the vandalism he observed and the whereabouts of the other suspects.
21  As he does so, Officers Pickering and Rhymes arrived on scene in their marked patrol
22  vehicles. Officer Pickering also activated his personal recording device beforehand.

23            **Backup Officers Arrive on Scene and Search for Other Suspects**.

24        While Officer Cooper is questioning the three suspects about the whereabouts of the
25  other suspects, Officer Pickering began to conduct a perimeter search of the building to look
26  for the other suspects and secure the premises. It is undisputed that none of the officers
27  knew the age of the other suspects, or what the other suspects were wearing, or whether
28  there were more suspects than the 911 caller was able to observe. The three suspects

1 were being detained and questioned approximately 25 feet from the southeast corner of a
2 large building in the back of the main market building that the owner, Ms. Ruby Stratton,
3 referred to as the "barn." The property to the east of the barn is a very large undeveloped,
4 unlit, heavily-wooded area with large trees that overhang the roof of the barn.

### Plaintiff Flees From Officers.

6 When Officer Pickering turned the southeast corner of the barn, he shined his
7 flashlight down the east side of the barn and spotted a male approximately 50-60 feet from
8 him. The male was crouched close to the east wall of the barn with his hands down by his
9 pants and less than an estimated 75 to 85 feet from where the three vandalism suspects
10 were being detained. Officer Pickering observed the suspect look in his direction and he
11 yelled at the suspect several times: "HI, COME HERE NOW! RIGHT NOW! PARADISE
12 POLICE!" When Officer Pickering began yelling at the suspect, the suspect looked at
13 Officer Pickering, stumbled and then fled.

14 Officer Pickering began pursuing the suspect on foot. Officer Cooper heard Officer
15 Pickering call out to the suspect and joined the foot pursuit to backup Officer Pickering while
16 Officer Rhymes detained the other three suspects at the crime scene. The suspect ran
17 around the northeast corner of the barn and then westward toward another structure on the
18 property that, unbeknownst to officers at the time, was a small bathroom. Both officers were
19 startled to find a few other people standing around the north side of the barn as they turned
20 the corner and pursued the suspect to the bathroom structure.

### Plaintiff Fights with Officers.

22 Officer Pickering observed the suspect enter the structure, but he was able to catch
23 up to the suspect just as the suspect closed the door behind him. Officer Pickering burst
24 through the door of the structure, and immediately encountered the suspect. Officer Cooper
25 entered the structure almost immediately thereafter. The structure turned out to be a very
26 small bathroom containing a toilet and sink, and the only light in the structure was light
27 coming through an opaque window of the bathroom from a single light fixture located
28 outside of the bathroom. A brief (approximately one minute) struggle ensued during which

1 time the suspect can be heard fighting the officers' efforts to gain control of his arms and
2 take him into custody, including ignoring the officers commands to stop reaching for his
3 waist. It is undisputed that the officers were not able to search the suspect for weapons
4 before the struggle ended and the suspect was handcuffed, or that Officer Pickering
5 sustained a minor injury during the struggle. After he was handcuffed, the suspect was led
6 out of the bathroom and placed against the wall to be searched for weapons. He was then
7 identified as Plaintiff Harold Funk.

**Plaintiff's Wife Corroborates Officers' Account**.

9 As Plaintiff was being held up against the wall and searched for weapons, his wife,
10 Pam Funk, approached the officers and asked them why they were chasing her husband
11 before she asked her husband, "Why would you run like that? Oh my God!" Unbeknownst
12 to officers until after the arrest, Ruby Stratton was having a birthday party in the barn and
13 the Funks were her guests. They had been at the party, drinking, for about five hours
14 before Plaintiff was arrested. In later conversation with the officers, Ms. Funk made a
15 number of spontaneous statements and admissions that corroborate the officers'
16 observations. She told Officer Cooper that Plaintiff went behind the barn to use the
17 bathroom, and when Officer Cooper told her that it is illegal to urinate in public, Ms. Funk
18 said, "Well. That's why he ran." When Officer Cooper told a male party-goer who showed
19 up on the scene to get Ms. Funk away from the officers, Ms. Funk told the male party-goer,
20 "Okay. I'm not gonna stay. Even though he's drunk and he's fighting with them." Other
21 examples abound, including this statement to Officer Cooper about what she observed, "He
22 ran by, you ran by, and I didn't even know it was him."

23 Mr. Funk was given a presumptive alcohol screening at the scene and had a blood
24 alcohol content of .16%. He was charged with public intoxication and resisting, obstructing,
25 and delaying the officers in the purist of their duties and transported from the scene to the
26 secure holding cell at the Paradise Police Department pending transport to the Butte County
27 jail. The photographs taken of Mr. Funk in the secure holding cell reveal no sign of physical

28

1   injury or distress or damage to his clothing, *and he denied any physical injury or pain during*
2   *the intake interview.*

### Plaintiff Admits He Was Not Uninjured By Officers.

Mr. Funk was transported to the Butte County jail and booked. He was photographed and underwent another medical screening where he again denied physical injury or pain. His blood alcohol was monitored for several hours until it dropped below the threshold established by Butte County for release, which is either .05% or .06%. Sometime after he was released from Butte County jail, Mr. Funk went to Feather River Hospital, where he was diagnosed with injuries consistent with a partially dislocated elbow.

### Defendants Factual Contentions

Plaintiff's Complaint purports to allege four federal claims and several supplemental state claims. His federal claims purport to include a claim under the Fourth Amendment for excessive force, a claim under the Eighth Amendment for cruel and unusual punishment, and claims under the Fourteenth Amendment for punishing him without due process, failure to train, failure to supervise, and equal protection. His complaint alleges permanent physical injury and emotional distress, and prays for "special damages, for hospitalization, for medical expenses, for attorney fees incurred in defending the criminal case, general damages in the amount of $1.5 million dollars, attorney's fees, punitive damages, and such other relief as the Court deems fair and appropriate under the circumstances." Defendants deny Plaintiff's allegations, and assert the qualified immunity defense and other affirmative defense to relief.

Based upon recently served, unverified "supplemental" responses to interrogatories propounded by the Town that narrow the factual disputes for discovery purposes under Rule 26, Defendants move for a protective that no discovery be had of the officers personnel files, medical files, psychological files, training files, Funk IA file or other similar information and materials that may be sought because the information is not discoverable under Rule 26 based upon Plaintiff's very narrow factual contentions to support his claims or subject to discovery before the immunity question is resolved.

1     **Count I**. Count I of the Complaint purports to allege a federal claim under § 1983 for

2 violation Mr. Funk's Fourth Amendment right to be free from the use of excessive force

3 while effecting his arrest, the violation of his nonexistent rights under the Eighth Amendment

4 as a pre-trial detainee and corresponding Fourteenth Amendment right to due process

5 before being punished. Count I does not allege that the officers lacked reasonable

6 suspicion to stop and question Plaintiff about the reason he was standing behind a closed

7 business within approximately 50 feet from where the business had been vandalized when

8 officers had information that other suspects were outstanding. Nor does he allege that

9 officers lacked probable cause to arrest him for public intoxication or interfering with,

10 obstructing, and delaying their investigation of the vandalism call by fleeing from the officers

11 when they tried to stop and question him and resisting their efforts to take him into custody.

12 He alleges only that the officers used excessive force to effect his arrest in violation of the

13 Fourth Amendment and by using excessive force to effect his arrest violated his Fourteenth

14 Amendment right not to be punished without due process and Eight Amendment right not to

15 be subjected to cruel and unusual punishment.

16     The officers' personnel files, training files, medical records, psychological records,

17 and IA file are not relevant to any of the elements of the Count I claims. Officers have the

18 "[t]he right to use some degree of physical coercion or threat thereof" to effect an arrest.[4]

19 But they do not "need to avail themselves of the least intrusive means" of effecting an arrest

20 because "[r]equiring officers to find and choose the least intrusive alternative would require

21 them to exercise superhuman judgment."[5] That, in turn, "[w]ould inevitably induce

22 tentativeness by officers, and thus deter police from protecting the public and themselves."[6]

23 "It would also entangle the courts in the endless second-guessing of police decisions made

24

25

26 _____

[4] *Graham v. Conner*, 490 U.S. 386, 396 (1989).

27 [5] *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994), *certiorari denied*, 515 U.S. 1159.

28 [6] *Id.*

under stress and subject to the exigencies of the moment."[7] **Thus, when a suspect alleges that officers used excessive for to effect his arrest, "[t]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intentions or motives."[8]** As such, the content of the officers personnel files, medical records, training files, and the Funk IA file are not relevant to an excessive force claim and Plaintiff is therefore not entitle to discovery of that material under Rule 26.

Moreover, the Eighth and Fourteenth Amendment claims in Count I are not legally cognizable claims, and Rule 26 does not permit discovery regarding claims that are not legally cognizable on their face. First, pretrial detainees are not protected by the Eight Amendment prohibition against cruel and unusual punishment.[9] And second, the Fourteenth Amendment prohibition on punishing pretrial detainees does not accrue until after arrest.[10] The detention itself is therefore properly analyzed under the Fourth Amendment,[11] and, as such, Count I provides no basis for the discovery sought under Rule 26. The 911 audio tapes, officers' audio tapes and transcripts thereof, officers' reports, officers' criminal trial testimony, photos taken of Mr. Funk in the holding cell and Butte County jail, Butte County jail intoxication log, and medical intake interviews have all been produced both in the underlying criminal trial and in this case.

**Count II**. Count II purports to allege a federal claim against the Town and Defendant Carrigan under § 1983 for "failure to instruct, supervise, control, and discipline," though it does not identify which provision of the constitution the Town and Carrigan supposedly violated and is nothing more than sweeping allegations that do not meet the requirement of setting forth specific facts regarding the casual role of each Defendant in the alleged

---

[7] *Id.*

[8] *Graham v. Conner, supra*, 490 U.S. at 397.

[9] *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977).

[10] *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2003).

[11] *Id.*, citing *Graham v. Conner, supra*.

1 | violation.[12] On April 8, 2010, the Town propounded contention interrogatories to Plaintiff
2 | seeking the factual basis for his Count II claim. On March 31, 2011, Plaintiff's counsel
3 | served yet another, unverified "supplemental" response to the interrogatories that identify
4 | the following "factual basis" for the Count II claims:

5 |     1.   **Officers Cooper and Pickering had been the subject of several**
6 | **complaints of constitutional rights violations which were known to Defendant**
7 | **Carrigan and the Town of Paradise**. Though Officers Pickering and Cooper have worked
8 | for the Town for several years each, and have contacted literally thousands of people in the
9 | course of their work as police officers for the Town, none of the thousands and thousands of
10 | individuals that they have contacted, other than Harold Funk, have ever filed a citizen's
11 | complaint against them -- not one. (Decl. of Gerald Carrigan). It is also undisputed that all
12 | officers (other than probationary officers) have constitutionally protected property interests in
13 | their employment and are not – just as any other civil service employee – subject to lawful
14 | discipline simply because someone makes a complaint of wrongdoing. (Decl. of Gerald
15 | Carrigan).

16 |     Of the witnesses listed in Plaintiff's disclosures, Defendant Carrigan knows four of the
17 | names from contacts with the Paradise Police Department during his 6 ½ year tenure as the
18 | Chief of the department. He knows the names John Lawrence, Justin Baltierra, Max
19 | Schumacher, and Harold Funk. None of these individuals can provide a basis for discovery
20 | under the Count II claims.

21 |     <u>John Lawrence</u>. Officer Cooper and Officer Pickering were not the officers who
22 | responded to the John Lawrence call, and, therefore, cannot be the basis of a claim against
23 | the Town and Carrigan regarding an alleged failure to train, supervise, or discipline officers
24 | Cooper and Pickering. As such, there is absolutely nothing in Officer Cooper or Pickering's
25 | files regarding the John Lawrence arrest. (Decl. of Gerald Carrigan)

26 |
27 |
28 | [12]  *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)

1      Justin Baltierra. Officer Cooper and Pickering arrested Justin Baltierra for drunk
2   driving and resisting arrest sometime in approximately December 2006, at which time he
3   had over 30 contacts with Butte County law enforcement agencies and has had many,
4   many more since. Mr. Baltierra did not make a citizen's complaint against the officers. On
5   approximately October 22, 2007, Mr. Baltierra pled guilty to the drunk driving charge, agreed
6   to apologize to officers Cooper and Pickering in writing for his misconduct that evening
7   (which he did), and agreed to pay monetary restitution for the injury sustained by officer
8   Cooper during the arrest. This disposition resolved all questions about the legality of the
9   officers' conduct in that matter and it undisputed that the officers were not disciplined for any
10   of the conduct Mr. Funk alleges in Count II. (Decl. of Gerald Carrigan). As such, the
11   officers' personnel files, medical files, psychological records, training files are irrelevant to
12   the Count II claim and Plaintiff is not entitled to the discovery under Rule 26.

13      Max Schumaker. On approximately March 26, 2007, Officer Pickering arrested Max
14   Shumaker for public intoxication and making terrorists threats. Mr. Shumaker had been
15   pummeled by a local celebrity cage fighter with whom he unwisely picked a fight. Mr.
16   Shumaker did not file a citizens' complaint against Officer Pickering. His criminal charges
17   were adjudicated on approximately April 21, 2008 and he was found not guilty. During the
18   course of that criminal matter, Mr. Shumaker's attorney made various allegations regarding
19   Officer Pickering. It is undisputed that Officer Pickering was not disciplined for any conduct
20   that Mr. Funk alleges in Count II, or that a thorough investigation of the matter could not be
21   completed without a statement from Mr. Shumaker that the department could not obtain until
22   after his criminal charges were adjudicated because he was represented by counsel with
23   criminal charges pending in the matter to be investigated. It is also undisputed that the
24   criminal charges were not adjudicated until long after the Funk arrest, or that Mr. Shumaker
25   was contacted by Lt. Billington after his criminal adjudication and told Lt. Billington that he
26   did not want to file a citizen's complaint but just wanted to move on. (Decl. of Gerald
27   Carrigan). As such, Mr. Shumaker's arrest is irrelevant to the Count II claim and Plaintiff is
28   therefore not entitled to the discovery he seeks under Rule 26.

1      Harold Funk. Chronologically, Mr. Funk was the last of the four arrests. He was

2 arrested on November 17, 2007 and it is undisputed that he refused to cooperate with the

3 investigation of his complaint, as his attorney in this case refused to make him available for

4 questioning by the department investigator. (Decl. of Gerald Carrigan). There can be no

5 genuine dispute that Plaintiff cannot establish the essential element of prior notice and

6 opportunity to correct to prevail on a failure to train or discipline claim. The Lawrence

7 matter, again, did not involve Officers Cooper or Pickering. The Baltierra case resulted in a

8 conviction, apology to officers, and restitution and cannot be the basis of a failure to train or

9 discipline case. The Shumaker criminal matter had not been adjudicated before Plaintiff was

10 arrested, and the department could not interview Mr. Shumaker before the Funk arrest

11 because he was represented by counsel with criminal charges pending regarding the

12 matter. Again, simple allegations are not grounds to discipline a civil service employee,

13 and Mr. Shumaker himself did not want to file a complaint. As such, there was not a single

14 matter that warranted discipline or training or other action before the Funk arrest, and the

15 Funk arrest itself is not actionable because, even assuming arguendo that his constitutional

16 rights were violated, a single, isolated instances of misconduct can never be the basis for

17 *Monell* liability. Plaintiff is therefore not entitled to discover the materials he seeks based

18 upon the very nature and timing of his own contentions.

19      Butte County Grand Jury, FBI, and DOJ Rebuff Department Critics. Elaine Baltierra

20 and her husband did make a verbal complaint to Lt. Billington about the arrest of Justin

21 Baltierra, her son. She launched a campaign for election to the town council on a platform of

22 police reform and formed an organization called the "Concerned Citizens of Paradise."

23 Complaints were made to the Butte County Civil Grand Jury, who found no wrongdoing in

24 any matter and praised the department for its good work in one its report. The matter was

25 controversial, but controversy does not amount to anything near a conditional violation. A

26 grand juror aligned with Ms. Baltierra was charged criminally in connection with leaking

27 information about the grand jury investigation. The FBI and DOJ also intervened in the

28

1 controversy and reviewed the department's policies and procedures at the request of an

2 unknown critic or critics and took no corrective action either. (Decl. of Gerald Carrigan).

3     No Prior Judgments for Civil Rights Violations.  It is undisputed that, except for this

4 case, the department was never sued for a non-employment civil rights violation in

5 Carrigan's 6 ½ year tenure, or that Defendant Carrigan was not aware of any non-

6 employment lawsuits ever filed against the department before his tenure began (Decl. of

7 Gerald Carrigan).

8     In summary, by the very nature of his claims and recent factual contentions, Plaintiff

9 has established that he is not entitled to the discovery he seeks under Rule 26.  This is not

10 a failure to train or discipline case, but a simple excessive force case.

11     2.  **Defendant Town of Paradise participated in the prosecution of Plaintiff**

12 **Funk**.  The allegation that the Town "participated in the prosecution" – whatever that vague

13 conclusion means – is not relevant to a 14th Amendment failure to train or discipline case

14 and is not actionable under § 1983.  The Town is a fictitious legal entity acting through

15 agents, and the Town cannot be held liable under § 1983 on a *respondeat superior* theory

16 as [*r*]*espondeat superior* or vicarious liability has no application in § 1983 litigation.[13]

17 Moreover, if the real theory is that the officers testified at the criminal trial, it is not an

18 actionable or a relevant fact entitling Plaintiff to any discovery under Rule 26 because

19 witnesses in judicial proceedings, including police officers, are absolutely immune from

20 liability under§ 1983 for their testimony.  Further, the discovery materials sought here have

21 no relevance to this factual contention – none.   As such, this so-called disputed fact does

22 not entitle Plaintiff to discovery under Rule 26.

23     3.  **Defendant Town of paradise failed to conduct and independent,**

24 **unbiased investigation into the Funk case, and recognized Officer Cooper as Officer**

25 **of the year following this incident and several other complaints of unconstitutional**

26 **conduct**.  This so-called disputed fact is not relevant to a failure to train claim either.  First,

27

28

[13] *Monel v. Dept. of Soc. Servs*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

1  the mere failure to investigate the basis for a subordinate's discretionary decisions is not a
2  ratification of the decisions.[14]  Moreover, the mere acquiescence in a single instance of
3  alleged unconstitutional conduct is not sufficient to demonstrate ratification either.[15]
4  Otherwise, "[t]o hold cities liable under section 1983 whenever policymakers fail to overrule
5  the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat*
6  *superior* liability into section 1983."[16] And random acts, or single instances of misconduct,
7  are likewise insufficient to establish municipal liability.[17] Finally, it is undisputed that the
8  officers were not disciplined in the Funk case and were exonerated from wrongdoing. As
9  such, given the state of the law, elements of the claim, and Plaintiff's own factual
10  contentions, the discovery materials he seeks do not fall within the parameters of
11  permissible discovery under Rule 26.

12     Training. As for his allegation of failure to train, his interrogatory answers regarding
13  the factual basis for Count II do not even allege a failure to train, presumably because the
14  records were made available to his counsel to debunk any genuine issue of material fact
15  regarding the extraordinary training afforded to officers in the department. There can be no
16  genuine dispute about the fact that Officers Cooper and Pickering are very well trained on a
17  regular, almost daily, basis. They each have substantially more training than is required by
18  law. They each have at all times met the rigorous training and testing requirements of the
19  California Peace Officers Standards and Training (POST) required by California law, and
20  the department requires all of its officers to undergo extensive additional training under the
21  Lexipol system in widespread use throughout the state.[18]

22     Excellent Operational History.  The department had over 96,000 documented
23  contacts and over 6000 adult and 800 juvenile arrests in the first four years of Chief

24

25  [14]  *Gillette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992).

26  [15] *Id.* at 1348.

27  [16] *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

28  [17] *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996).

   [18]  *See* Lexipol website at http://www.lexipol.com/

1   Carrigan's administration, and not one citizen's complaint regarding the use of force. The
2   incidents discussed previously represent just 4 of over 120,000 documented contacts and
3   over 7500 adult and 1000 juvenile arrests, which is also an excellent record and indication
4   that the officers are all very well trained and performing admirably. (Decl. of Carrigan)

5        Other Interrogatory Answers. And finally, Plaintiff's interrogatory answers are self-
6   defeating for other reasons too. First, when asked to identify the policies he claims are the
7   subject of Count II, he identifies only the written use of force policy and cite & release policy.
8   He also identifies a "policy not to charge drunk in public unless over a certain limit according
9   to PAS," which does not exist, nor which he has the constitutional right to impose upon the
10  department as his preference. It is undisputed that the officers receive training on use of
11  force, cite & release and other department policies and Plaintiff's counsel was given access
12  to the training records to confirm this fact. (Decl. of Carrigan).  As for a non-existent policy of
13  not charging drunk in public, Plaintiff cannot use a non-existent policy as the basis for a
14  failure to train claim – the policy does not exist and the law is very clear that "[i]f an officer
15  has probable cause to believe that an individual has committed even a very minor criminal
16  offense in his presence, he may, without violating the Fourth Amendment, arrest the
17  offender."[19]   Nor can Plaintiff use a failure to train claim to try to force the department to
18  adopt such a policy. There are no cases that Defendants' could find that say § 1983
19  litigation is an appropriate tool to force a department to adopt a policy that is inconsistent
20  with state criminal statutes – none. Plaintiff has no such previously recognized
21  constitutional right under existing law and is therefore not entitle to discovery on this theory
22  under Rule 26.

23       Count III.  Count III purports to allege a federal claim against Defendant Carrigan for
24  failure to supervise. It is a remake of the Count II claim and does not entitle Plaintiff to
25  discovery for the same reasons just discussed above. To recap the Count II matters, the
26  John Lawrence arrest did not involve Cooper or Pickering.   The Baltierra case was

27

28

---

[19] *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

1  adjudicated in the officers' favor with a guilty plea, apology, and restitution order for the

2  personal injury sustained by Officer Cooper because of Mr. Baltierra's own criminal

3  misconduct.  The Shumaker case was not even adjudicated until several months after the

4  Funk arrest and cannot provide a basis for the Count III claim because no complete

5  investigation was possible under the law until several months after the Funk arrest. There

6  can be no dispute that Plaintiff has no other factual basis for this claim, as he has not

7  disclosed a factual basis for the claim in his interrogatory answers.  Likewise, he cannot sue

8  Defendant Carrigan for failing to supervise the scene because it is undisputed that he was

9  not present not present at the scene or advised of the arrest until after the fact.  "Liability

10  under [§] 1983 arises only upon a showing of personal participation by the defendant.  A

11  supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor

12  participated in or directed the violations, or knew of the violations and failed to act to prevent

13  them.  There is no respondeat superior liability under [§] 1983."[20]  There are no factual

14  disputes that entitle Plaintiff to the discovery of the materials he seeks under Rule 26.

15      No Other Factual Matters At Issue.   Other than the forgoing, all of Plaintiff's

16  responses indicate that the remaining basis for his Count II claim is the work product and

17  trial strategy of his attorney, or information that is privileged under Rule 501 of the Federal

18  Rules of Evidence, neither of which can be used as evidence in the case or entitle him to

19  discovery under Rule 26.

20      Count IV.   Count IV purports to be a federal claim for conspiracy.  It is factually

21  impossible for Plaintiff to establish a conspiracy and the materials he seeks are not relevant

22  to such a claim under Rule 26. Plaintiff has not pled the essential elements of a conspiracy[21]

23  and the incontrovertible evidence proves that there was no prior agreement or meeting of

24  the minds to deprive Plaintiff of his civil rights or equal protection of the laws.[22] The entire

25

26  [20]  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

27  [21]  *Karmin-Panahi v. L.A. Plice Dept.*, 839 F.2d 621, 626 (9th. Cir. 1988).

28  [22]  *United Steelworkers of Am. V. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-1541 (9th Cir. 1989).

1  incident was recorded. There is no discussion among Officers Cooper and Pickering before

2  the arrest, and Defendant Carrigan was not present and had no knowledge of the incident

3  until after the fact. Nor are the contents of the materials sought relevant to such a claim

4  within the meaning of Rule 26.

5       State Law Claims. The supplemental state law claims provide no basis for discovery

6  of the material either. They are all derivative of the use of force claim in Count I, and fail as

7  a matter of law because Plaintiff has not challenged the officers' right to stop and question

8  or arrest him under the Fourth Amendment. As such, all of his state aw claims turn on the

9  excessive force question too.

10       Conclusion. Prior to Plaintiff's amended interrogatory answers, the discovery and

11  meet and confer efforts were conducted based upon the statements of counsel and

12  allegations in the Complaint. Plaintiff's counsel was given access to and reviewed any

13  discipline records of the officers, training records for the officers, and Funk IA file to confirm

14  the representation made herein. Plaintiff thereafter narrowed the scope of the claims in

15  interrogatory answers. He is not entitled to the discovery he now seeks based upon his own

16  interrogatory responses, as they are not relevant to his claims or the factual disputes here

17  within the meaning if Rule 26.

18  ## II. REQUIREMENT REGARDING CONFERRING

19       Pursuant to Local Rule 251(c)(1), the details of the meet and confer conferences

20  between counsel are as follows:

21  ### A.  Plaintiff's Statement Regarding Conferring

22       On December 16, 2010, plaintiff sent to defendant a meet and confer letter

23  addressing all of the deficiencies in defendants' discovery responses. On January 7,

24  2011, plaintiff's counsel conferred with defendant's counsel via telephone regarding this

25  discovery dispute. Plaintiff and defendant were not able to reach a resolution as

26  defendant's counsel disagrees with plaintiff's contentions. Specifically, defendant

27  acknowledges that the discovery responses were untimely but disputes any waiver of

28  objections due to their untimeliness. Defendant's counsel has agreed to produce the

1   defendant officers' personnel files, training files, and the Internal Affairs investigation but

2   has not agreed on a means of producing these records.  Defendant has refused to

3   produce the officers' psychological evaluations and medical records.  Defendant also

4   contends that he did do a privilege log although plaintiff is unable to locate anything that

5   complies with the rules regarding privilege logs.  Further, although the rules specifically

6   state that one cannot respond to an interrogatory by referring a party to documents that

7   contain the response, defendant disagrees with this rule.

8      Therefore, plaintiff and defendant have been unable to reach resolution and seek

9   the court's assistant.

10   **B.**   **Defendant's Statement Regarding Conferring**

11      Defendants do not agree with Plaintiff's meet and confer statement.  While it is true

12   that counsel met and conferred about the issues raised in the December 16, 2010 letter, in

13   general, they did not meet and confer on each of the questions/objections at the deposition

14   that are now contained in Plaintiff's portion of the joint statement.  Nor have they met and

15   conferred since Plaintiff served yet another "supplemental" response to interrogatories

16   propounded to him by the Town of Paradise that are at the very center of the dispute over

17   the materials sought here and that open the door for a whole set of additional defenses in

18   the case. Those supplemental interrogatory answers have not been verified and were not

19   served until after the pending discovery motions were filed.

20      Counsel also discussed Defendants' continued objections to Plaintiff's discovery

21   responses and disclosures, and Plaintiff's counsel indicated that he would meet with his

22   paralegal the following week and correct any deficiencies with Plaintiff's discovery and

23   disclosures, though counsel did not go line by line thought the interrogatories, inspection

24   demands, or Plaintiff's latest disclosure deficiencies. Rather, the meet and confer focused

25   on Plaintiff's assertion of the work product doctrine to withhold lawful discovery in the case

26   and his failure to produce lawful discovery in the case. A follow up email to Plaintiff's

27   counsel's secretary confirmed that all of the interrogatory responses for which a work

28   product objection had been raised were at issue because Plaintiff asserted a blanket work

1  product objection to virtually all of the interrogatories and inspection demands propounded
2  to him, including a work product objection to production of documents subject to mandatory
3  disclosure and production under Rule 26. It was the third time counsel meet and conferred
4  about the bogus work product objections.

5      In addition to discussing the foregoing matters, counsel discussed Defendants'
6  response to Plaintiff's inspection demands and the format by which Defendants asserted
7  attorney-client privilege and work product objections to the requests and the requirements of
8  Rule 26 for asserting the objections. Defendants counsel confirmed that, as indicated in the
9  response, only communications between the identified individuals and attorneys regarding
10 the litigation were withheld on privilege grounds, and that the work product withheld was
11 created by Defendants' counsel after the litigation was commenced and did not include any
12 documents or materials created by others, including the client. Plaintiff's counsel indicated
13 he would look at the rule and get back to Defendants' counsel after talking with his
14 paralegal, but never raised the issue again until filing Plaintiff's motion.

15     And, finally, counsel discussed Defendants' reference to documents from which
16 interrogatory answers can be obtained as authorized by Rule 33(d). Again, Plaintiff's
17 counsel said he would review the matter with his paralegal and never contacted Defendants'
18 counsel to discuss the rule again but simply filed a motion.

19     Defendants also disagree with Plaintiff's legal contentions, which will be addressed
20 later in this joints statement. They do agree that the written response to Plaintiff's discovery
21 were late, but for good cause. Plaintiff's counsel was notified that the responses could not
22 be completed on time and that Officer Cooper was out on extended medical leave to have
23 surgery, thus preventing proper certification and verification of the responses until he
24 returned. In the interim time, though, Defendants' counsel produced documents and made
25 documents available to Plaintiff's counsel to review subject to an agreement not to disclose
26 unless and until the Court issued an appropriate protective order. Plaintiff's counsel took
27 advantage of that arrangement and did not object to that process until his letter of
28 December 16, 2010, after all of the discovery had been made available to him to review.

1    In summary, on January 7, 2011, the parties undertook mutual obligations to address
2    some of the discovery disputes each had with the other, though some disputes could not be
3    resolved.  Plaintiff's counsel did not follow through with his part of the agreement and has
4    yet to provide Defendants' counsel with the medical records for review that Plaintiff's
5    counsel wants included in a protective order in this case or complete, non-evasive discovery
6    responses and other documents subject to lawful discovery.  Moreover, with Plaintiff's
7    supplemental interrogatory responses, Defendants' counsel anticipates having at least one
8    other meet and confer conference with Plaintiff's counsel as required by Local Rule 251,
9    and, based upon a letter he received from Plaintiff's counsel after Defendants' re-filed their
10   discovery motion, Defendants' counsel anticipates receiving at least some of the additional
11   medical records.

12   ### III. **DISCOVERY REQUESTS IN DISPUTE**

13   Pursuant to Local Rule 251(c)(3), what follows are the contentions of the parties as
14   to each issue raised by plaintiff:

15   **A.   All Discovery Responses Were Untimely**

16   **1.     Plaintiff's Contentions**

17   Defendants' responses were untimely.   Defendants' responses to the
18   discovery were due October 25, 2010 (last extension) but were not served until November
19   30, 2010. **Therefore, defendants have waived _all_ objections**.  The party on whom the
20   request is served has *30 days* within which to *respond* in writing to the request—i.e., by
21   stating whether inspection and related activities will be permitted as requested. [FRCP
22   34(b)(2)(A)].  The date designated for production of the documents should be *after* the 30–
23   day period within which the response is due, so that the requesting party will know
24   whether the documents are going to be produced (Rutter Group Practice Guide:  Fed. Civ.
25   Proc. Before Trial, Ch. 11, Part IV, 5(b)(2)(c).  Failing to respond to a Rule 34 request
26   within the time permitted *waives all objections* thereto—including claims of privilege and
27   work product! [*Richmark Corp. v. Timber Falling Consultants* (9th Cir. 1992) 959 F2d
28   1468, 1473—"Failure to object to discovery requests within the time required constitutes a

1   waiver of any objection"; see also *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.* (ED PA 1999)

2   187 FRD 528, 529].

3       Although defendant intends to seek a protective order, a party served with a

4   deposition notice or discovery request must obtain a protective order *before the date set*

5   for the discovery response or deposition. The mere fact that a motion for protective order

6   is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for

7   the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche*

8   *Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v.*

9   *Landy* (2nd Cir. 1983) 705 F2d 624, 634].

10      On December 15, 2010, defendants finally provided a disc with documents to

11   plaintiff. However, this document production fails to comply with FRCP Rule 34(b)(2)(E)(i)

12   as the documents are not organized and labeled "to correspond to the categories of the

13   request." See also *SEC v. Collins & Aikman Corp.* (SD NY 2009) 256 FRD 403, 409–410].

14   Further, many documents still have not been produced including the defendant's

15   personnel files and the Internal Affairs Investigation file.

16      **2.    Defendants' Contentions**

17      Defendants acknowledge that they were not able to serve written responses

18   by the agreed upon due date. However, there was good cause for their inability to comply.

19   Defendants' underestimated the time that would be required to prepare answers to the

20   discovery requests, and promptly emailed Plaintiff's counsel to advise him that the

21   responses could not be completed on time. The initial delay was a simple mistake about the

22   time that would be required to discharge Defendants' duties in responding to the discovery

23   requests, but a serious medical issue arose that had Officer Cooper out for surgery and

24   unavailable to assist in preparing the responses for six weeks. In a good faith effort to keep

25   discovery moving and provide Plaintiff with as much of the discovery as possible,

26   Defendants' counsel produced the entire policy and procedure manual for the department in

27   effect at the time of Plaintiff's arrest, and made an agreement with Plaintiff's counsel to let

28   him review the materials in question (disciplinary records, training records, Funk IA) while

1   awaiting Officer Cooper's return, which he did review over several hours in separate
2   sessions at Paradise PD.  The written responses were served within a couple of days after
3   Officer Cooper became available after his surgery.

4          Moreover, Defendants did not serve an improper response simply to meet a
5   deadline, as they take their obligations seriously and could not meet the Rule 26 certification
6   requirements for signing the responses until after Officer Cooper became available following
7   his surgery. Furthermore, no objections were made about the timing of the responses until
8   after the responses were served and after the documents were produced and after the other
9   materials were reviewed by Plaintiff's counsel.     Defendants therefore respectfully ask the
10  Court to find good cause for the delay in serving written responses to the discovery.

11  **B.**     **Request for Production of Documents to Pickering and Cooper**

12      **1.**     **REQUEST NO. 1**

13         ALL DOCUMENTS EVIDENCING YOUR contention that any PERSON,
14  other than YOU, contributed to the occurrence of the INCIDENT or the injuries or damages
15  claimed by plaintiff.

16          **Response to Request No. 1**

17         Defendant objects to the request for the following reasons: (1) the
18  definition of the term "evidencing" is vague and ambiguous in that it requires
19  Defendant to speculate about the associations between discoverable
20  evidence and the acts and omissions at issue in the case; (2) the request is
21  vague and ambiguous to the extent it requires speculation about the injuries
22  and damages being claimed by Plaintiff because Plaintiff has not complied
23  with his Rule 26 disclosures requirements or produced discoverable
24  information lawfully requested of him in this case; (3) the request seeks
25  information that is confidential and subject to disclosure only pursuant to the
26  terms of a protective order agreed to by counsel and/or imposed by the
27  Court.

28

1
2
3
4
5
6
7
8
9
10

Subject to its objections, Defendant will (and has) produced documents in its possession, custody, or control regarding the facts and circumstances surrounding the foot pursuit and arrest of Plaintiff Harold Funk, including the audiotapes of the 911 calls to dispatch, the police reports, and the audiotapes made by Officers Cooper and Pickering (including a transcript of the audiotapes). Defendant also produced confidential files for inspection by Plaintiff's counsel pursuant to a protective order agreed to by counsel pending a protective order being entered by the Court, and will make those files and documents available for further inspection and copying per the terms of a protective order the parties will seek from the Court.

11

### a. **Plaintiff's Contention as to Request No. 1**

12
13
14
15
16
17

Plaintiff has complied with his Rule 26 Disclosure requirements as well as provided responses to interrogatories and request for production of documents, has produced documents, has produced himself for deposition, and defendants have taken plaintiff's physician's deposition. Defendants need to provide a response based on the information currently available to them.

18
19
20
21
22
23
24
25
26
27
28

To date, defendants have failed to provide documents responsive to this request. Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order. However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply. A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under subpoena)]. Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir. 2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185 FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for documents withheld on grounds of privilege or work product]. When the documents were inspected, documents were marked that plaintiff would like produced. Since defendants have failed to provide a privilege as to which documents they intend on seeking a protective order for and no documents have been produced, plaintiff is unable to determine defendants' intention as to compliance.

### b. **Defendant's Contention as to Request No. 1**

The allegation that Defendants have not produced documents responsive to this request is bogus. Defendants produced 96 PDF files, 44 photographs, and 10 Wave Sound files, plus PDF files of the entire Paradise Police Department Policy manual in effect at the time of the Funk arrest, *all as kept in the ordinary course of the Town's business as provide in Rule34*. Plaintiff is not entitled to have the documents organized and labeled to correspond to each request when Defendants elect to produce the documents as they are kept in the ordinary course of its business as was done here. The

files include transcripts of the audio recordings, police reports of the incident, medical screening forms, intoxication logs, dispatch logs, holding cell photos, booking report and photo, request for discovery from prosecutors, witness memo, scene photographs, commendation letters, and wave files of 911 call and audio recordings made by Officer Cooper and Officer Pickering of the entire incident. What has not been produced are Officer Pickering and Officer Cooper's personnel files, medical files, psychological files, training files, or the Funk IA file, and the documents subject to the attorney-client privilege and work product privilege described in the categories in the response as provided in Rule 26(b)(5)(A), but, with the exception of the attorney-client and work product documents, the files were made available to Plaintiff's counsel to confirm the Defendants' representation regarding their contents. Plaintiff's counsel spent three separate sessions reviewing the files.

Moreover, the documents produced are the all of the documents regarding the underlying arrest and detention, which are the only relevant documents within the meaning of Rule 26 given the elements of the excessive force claim. That is, in an excessive force claim, **"[t]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intentions or motives."** As such, the only relevant information is the facts and circumstances confronting the officers on scene, and not prior events they were involved in, or their medical and psychological history. The documents responsive to this request have been produced, and have been produced both in the criminal case and in this case. Most are referenced in Plaintiff's disclosure and have been produced back to Defendants' in one form or another.

Plaintiff's Discovery Abuses. Plaintiff, on the other hand, has served demonstrably false interrogatory answers and has withheld his Rule 26

1   damage documents under a claim of work product privilege, including his

2   medical records.  That information is briefed in detail in Joint Statement filed in

3   support of Defendants' discovery motion and Defendants' will not burden the

4   court and its staff by repeating it here.  In summary, Plaintiff has not only

5   violated Rule 26, Rule 34, and Rule 37, but has served interrogatory answers

6   that negate any claim he may have to discovery of the files under Rule 26.

7   Defendants do not have to produce discovery sought by Plaintiff that is beyond

8   the scope of the claims or defenses."[23]  Filing a lawsuit or propounding a

9   discovery request is not a wholesale license to conduct discovery.  Plaintiff

10  has not sought, much less attempted to make the required showing of good

11  cause, to expand the scope of discovery.  Moreover, this response was made

12  *before* Plaintiff served his third set of responses to the Town's interrogatories

13  discussed earlier, which negate his right to discovery of the materials on a

14  *Monell* theory.  The materials are simply not relevant to his claim and the

15  Declaration of Gerald Carrigan filed herewith is the only discovery method

16  necessary regarding Plaintiff's newest contentions regarding his *Monell* claim,

17  and Defendants seek a protective order under Rule 26(c)(1)(C) that prescribes

18  the Declaration of Gerald Carrigan as a sufficient alternative method of

19  discovery regarding the factual contentions in Plaintiff's third supplemental

20  interrogatory responses to the Town.

21       Privileged Documents.  The documents at issue are described in

22  sufficient detail.  The rule does not require an inventory of the content of every

23  file.  Moreover, the attorney-client and work product objections comply with

24  Rule 26(b)(5)(A).  Conversation between attorney and client regarding the

25  litigation are privileged regardless of when they occurred, and communications

26  regarding the litigation obviously cannot occur until the litigation is filed and

27

28  [23] Rule 26(b)(1); *In re Sealed Case*, 381 F.3d 1205, 1214-1215 (D.C. Cri. 2004).

served. The work produce objection is for documents created by Defendants'
attorney as stated in the objection.  On January 7, 2011, counsel discussed
this issue and Defendants' counsel confirmed (and confirms here again) that:
(1) all communication subject to the attorney-client privilege occurred between
counsel and his clients after the litigation was filed; and (2) the work product
being withheld is work product created by counsel regarding the litigation, and
not by the client or third parties; (3) no documents prepared by the client or
any other party – other than documents that are communication to counsel
after the litigation was filed -- have been withheld.  It is hard to understand
Plaintiff's argument that a written log must prepared for documents that do not
exist.  Finally, all of the underlying recordings, reports, forms, photographs,
and transcripts of the audio recordings have been produced.  This is not a
business case that generated thousands of documents.  It generated a few
audio recordings, booking forms and photos, medical intake forms, an
intoxication log and transcripts of the audio recordings.  Those have all been
rpdicied more than once.

    <u>Prior Agreement to Jointly Seek Protective Order</u>.  Plaintiff simply
ignores the fact that counsel entered into an agreement to jointly seek a
protective order for the documents they each wanted to protect from
disclosure and that Plaintiff has not kept his end of the bargain.  The
agreement evolved from discussions between counsel at the depositions of
the officers and through 2 discovery motions filed by Defendants and
numerous others meet and confer discussions.    It culminated on January 7,
2011 in the last meet and confer between counsel.  During that conference, as
previously discussed, Plaintiff's counsel agreed to produce Plaintiff's medical
records for review and inclusion in a stipulation for a protective order.
Defendants counsel undertook the task to begin drafting the stipulation and
expected Plaintiff's medical records before completing the draft. Those efforts

1   were made initially but abandoned after Plaintiff's counsel failed, once again,

2   to follow through on his commitment to provide the medical records.  Those

3   records are medical records that Plaintiff intends to use to establish the nature

4   and extent of his alleged damages, but that had been withheld up to that time

5   on work product grounds despite the clear mandate of Rule 26 to make them

6   available for production when requested almost a year earlier. That issue is

7   another issue briefed in the other joint statement.  Defendants will not, and

8   could not reasonably be expected to, propose terms for the protection of

9   materials they have not reviewed.  Moreover, *Plaintiff has yet to produce all of*

10  *the records, including the records he intends to use to prove his damage*

11  *claims.*  His complaint about not presenting a stipulated protective order

12  should fall on deaf ears. Plaintiff and his counsel have not made *any effort* to

13  facilitate the preparation or presentation of the protective order that they are

14  now complaining to the court has not been timely presented. They are solely

15  to blame for the delay.

16  Moreover, given Plaintiff's irrefutable abuse of the discovery process

17  and clear evidence of his utter contempt for the rule of law, he cannot be

18  reasonably expected to comply with a protective order. He has filed

19  demonstrably false interrgoary answers under oath, and withheld documents

20  under a work  product objection that are not only subject to mandatory

21  disclosure under Rule 26.  Further, despite Plaintiff's counsel's *written*

22  *representation* that no documents were being withheld under the work product

23  privilege except for an interview with Plaintiff and an interview with his wife,

24  *counsel thereafter began revealing and producing medical records that he*

25  *previously withheld under the work product privilege.*

26  Summary.  Defendants have fully complied with this request and

27  produced the documents within the scope of Rule 26, as well as made the

28  other materials available to confirm the representations about the content of

the documents. Plaintiff legal arguments are contrary to the requirements of Rule 26, as, for example, his arguments about labeling the document to correspond to each request when the rule allows Defendants to produce them as they are kept in the ordinary course of business. He also ignores the fact that he is solely responsible for the delay in the preparation of a stipulation for protective order, and has now served a third supplemental response to the Town's interrogatories that negate any right to obtain the materials sought under Rule 26.

**2.     REQUEST NO. 2**

ALL DOCUMENTS EVIDENCING YOUR contention that Plaintiff was not injured in the INCIDENT.

- **REQUEST NO. 3**

ALL DOCUMENTS EVIDENCING YOUR contention that the injuries or the extent of the injuries claimed by Plaintiff were not caused by the INCIDENT.

- **REQUEST NO. 4**

Any and all DOCUMENTS EVIDENCING all physical evidence seized, viewed, or photographed relating in any way to the INCIDENT described in Plaintiff's COMPLAINT.

- **REQUEST NO. 5**

Any and all DOCUMENTS EVIDENCING the result of any police examinations, analysis, or tests on physical evidence relating in any way to the INCIDENT described in Plaintiff's COMPLAINT.

- **REQUEST NO. 7**

Any and all general investigative reports, including internal investigations of civilian complaints arising out of the INCIDENT.

- **REQUEST NO. 9**

Any and all written or otherwise recorded statements of witnesses to the INCIDENT, including but not limited to the Defendant Officers involved in the INCIDENT.

**Response to Request Nos. 2 through 5; 7 and 9**

Please see response to request number 1.

**a.    Plaintiff's Contention as to Request Nos. 2 through 5; 7 and 9**

Plaintiff has complied with his Rule 26 Disclosure requirements as well as provided responses to interrogatories and request for production of documents, has produced documents, has produced himself for deposition, and defendants have taken plaintiff's physician's deposition.    Defendants need to provide a response based on the information currently available to them.

To date, defendants have failed to provide documents responsive to this request.   Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order.    However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply. A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under

subpoena)]. Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir. 2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185 FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for documents withheld on grounds of privilege or work product]. When the documents were inspected, documents were marked that plaintiff would like produced. Since defendants have failed to provide a privilege as to which documents they intend on seeking a protective order for and no documents have been produced, plaintiff is unable to determine defendants' intention as to compliance.

**b. Defendant's Contention as to Request Nos. 2 through 5; 7 and 9**

Plaintiffs' contentions appear to be cut and pasted from the previous issue, and Defendants response would be the same. Rather than cut and past the response here, Defendants refer to and incorporate their prior response as if fully set forth herein and make the following additional comments.

In additional to the information in the records produced of the facts and circumstances facing the officers on scene, these interrogatories seek information contained in medical records that Plaintiff's was required to marshal and produce in April 2009 pursuant to document requests from Defendants specifically asking Plaintiff for his Rule 26 damages documents. Again, that matter is briefed in the other joint statement filed in support of Defendants' motion. The objections and response are proper for the reasons previously discussed in Defendants response to Palintff's conetions under Request No. 1 above. Defendants will discharge their obligation to supplement the response when and if the additional information they seek in their motion becomes available or the Court relives them of that obligation pursuant to motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3.**     <u>**REQUEST NO. 10**</u>

       Any and all written or otherwise recorded statements of Defendant HAROLD ANTHONY FUNK, including the notes taken by the interviewer.

       <u>**Response to Request No. 10**</u>

       Please see response to request number 1. In addition, Defendant objects to this request because it is vague and ambiguous in that the Town of Paradise is a fictitious legal entity and not a person who can be interviewed. Defendant will, subject to protective order, produce the file of the IA in this matter, which contains the witness interviewed concerning this matter, and has already produced the file for inspection by Plaintiff's counsel pending entry of a protective order by the Court.

       **a.**     <u>**Plaintiff's Contention as to Request No. 10**</u>

       To date, defendants have failed to provide documents responsive to this request. Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order. However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply. A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under subpoena)]. Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir. 2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185 FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for documents withheld on grounds of privilege or work product]. When the documents were inspected, documents were marked that plaintiff would like produced. Since defendants have failed to provide a privilege as to which documents they intend on seeking a protective order for and no documents have been produced, plaintiff is unable to determine defendants' intention as to compliance.

16

**b.    Defendant's Contention as to Request No. 10**

17
18
19
20
21
22
23
24
25
26
27

The audio recordings of the officers' interactions with Plaintiff, and records of his statements and admission to officers and jail personnel after his arrest have been produced. His attorney in this case refused to make him available for an IA and is therefore well aware that no statements were taken for an IA. His contentions are unclear as to any other statements he claims to exist which have not been produced. Rather, Plaintiff seems to have just cut and pasted a canned contention without regard to the content of the request, and, to that extent, Defendants can only rely on their initial response to the canned contentions under Request number 1 above and incorporate them again here once more. In sum, the objections and response are proper, and Plaintiff has since served third supplemental responses to the interrogatories

28

1   propounded to him regarding the *Monell* claim that negate his right to the

2   discovery of the materials he seeks under Rule 26.

3   **4.   REQUEST NO. 12**

4   All information contained in the records or in computer(s) that were/are

5   maintained by the Internal Affairs Division of the TOWN OF PARADISE police

6   department or any other division of the TOWN OF PARADISE concerning complaints

7   made against the Defendant Officers.

8   **Response to Request No. 12**

9   Defendant objects to this request on the grounds that it seeks

10   information not subject to discovery under Rule 26 to the extent that it seeks

11   information about complaints that were not sustained or that are not similar

12   to the complaints made by Harold Funk in this case. Defendant has

13   produced Defendant Officers disciplinary records for inspection by Plaintiff's

14   counsel, and will make them available for inspection and copying when the

15   Court enters the protective order, and will likewise make the IA file in this

16   matter available for inspection and copying per the protective order.

17   • **REQUEST NO. 13**

18   Any and all DOCUMENTS relating to injuries sustained by any civilian during

19   or as a result of an arrest or detention conducted by Defendant OFFICER COOPER.

20   **Response to Request No. 13**

21   Defendant objects to this request on the grounds that it seeks

22   information not subject to discovery under Rule 26 to the extent that it seeks

23   information about arrests or detention of citizens for which no complaint was

24   filed or sustained. Defendant has produced Defendant Officers disciplinary

25   records for inspection by Plaintiff's counsel, and will make them available for

26   inspection and copying when the Court enters the protective order, and will

27   likewise make the IA file in this matter available for inspection and copying

28   per the protective order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### a.   **Plaintiff's Contention as to Request Nos. 12 and 13**

The documents requested are discoverable as they relate to plaintiff's claims, defendant's defenses, and are likely to lead to the discovery of admissible evidence. Kelly v. City of San Jose (1987) 114 FRD 653; Soto v. City of Concord (1995) 162 FRD 603.

To date, defendants have failed to provide documents responsive to this request. Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order.   However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply. A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under subpoena)].   Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir. 2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for documents withheld on grounds of privilege or work product]. When the documents were inspected, documents were marked that plaintiff would like produced. Since defendants have failed to provide a privilege as to which documents they intend on seeking a protective order for and no documents have been produced, plaintiff is unable to determine defendants' intention as to compliance.

**b.    Defendant's Contention as to Request Nos. 12 and 13**

In addition to their earlier response to the canned contention under Request number 1 above, Defendants contend that the information sough here do not relate to Plaintiff's claims. Plaintiff has simply asserted a conclusion that the information relates to his claims, but has made absolutely no effort to tell the court how they relate to his claims. Mere conslsuory alelations are not sufficient to obtain discovery. Moreover, for the reasons Defendants have discussed under the nature of the case above (and Declaration of Gerald Carrigan), the materials sought clearly do not relate to Plaintiff's claims. It has nothing whatever to do with the factual contentions in his interrogatory answers or an otherwise cognizable *Monell* claim under the irrefutable facts of this case, and Defendants therefore have no obligation under Rule 26 to produce the information.[24]

**5.    REQUEST NO. 14**

All records, interviews, memoranda, or other documents contained in or made part of the personnel record or file of Defendant OFFICER COOPER that were and/or are currently maintained by the TOWN OF PARADISE police department, including but not limited to complaints concerning his conduct as a police officer and law enforcement officer, disciplinary or internal law enforcement review of his activities as a

---

[24] Rule 26(b)(1); *In re Sealed Case*, 381 F.3d 1205, 1214-1215 (D.C. Cri. 2004).

police officer or law enforcement officer, performance evaluations, and psychiatric evaluations.

### Response to Request No. 14

Defendant has produced Defendant Officers disciplinary records and evaluations and other personnel records in the personnel file for inspection by Plaintiff's counsel, and will make them available for inspection and copying when the Court enters the protective order, and will likewise make the IA file in this matter available for inspection and copying per the protective order. Defendant will not comply with the request for any psychiatric evaluations as they are not subject to discover under Rule 26.

### a.    Plaintiff's Contention as to Request No. 14

The documents requested are discoverable as they relate to plaintiff's claims, defendant's defenses, and are likely to lead to the discovery of admissible evidence. Kelly v. City of San Jose (1987) 114 FRD 653; Soto v. City of Concord (1995) 162 FRD 603.

To date, defendants have failed to provide documents responsive to this request. Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order. However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply. A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir.

1   1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d

2   624, 634].

3       Further, parties withholding documents as privileged should identify

4   and describe the documents in sufficient detail to enable the demanding

5   party "to assess the applicability of the privilege or protection." [FRCP

6   26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under

7   subpoena)].   Boilerplate objections or blanket refusals in response to a

8   FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern &*

9   *Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir.

10  2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

11  FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for

12  documents withheld on grounds of privilege or work product].   When the

13  documents were inspected, documents were marked that plaintiff would like

14  produced.   Since defendants have failed to provide a privilege as to which

15  documents they intend on seeking a protective order for and no documents

16  have been produced, plaintiff is unable to determine defendants' intention as

17  to compliance.

18      **b.   Defendant's Contention as to Request No. 14**

19      This is yet another canned contention where Plaintiff relies only on

20  conclusory statements that the information relates to his claims but makes no

21  effort to show the court why the information relate to his claims. Defendants

22  one again incorporate their contentions from Request 1 above and make some

23  additional observations.   The Declaration of Gerald Carrigan addresses the

24  generalized contentions raised by Plaintiff here.   Moreover, Plaintiff has not

25  made a showing of how, for example, "any complaints concerning his conduct

26  as a police officer" relate to his excessive force claim or interrogatory answers.

27  Such requests are clearly beyond the scope of his claims and not discoverable

28  without a showing of good cause, which Plaintiff has not sought or made.

**6.**   **REQUEST NO. 15**

Any and all training records of Defendant OFFICER COOPER, including but not limited to use of force, serving search warrants, conducting search of a residence, and detaining or arresting individuals.

**Response to Request No. 15**

Please see response to request number 1.  The training records were made available to Plaintiff's counsel for inspection and will be made available for inspection and copying per a protective order as previously discussed.

- **REQUEST NO. 16**

Any and all DOCUMENTS EVIDENCING any internal investigation into Plaintiff's COMPLAINT arising from the INCIDENT.

**Response to Request No. 16**

Please see response to request no. 1. Defendant will make the Funk IA available for inspection and copying per a protective order as previously discussed.

- **REQUEST NO. 17**

The entire internal investigation file of the INCIDENT.

**Response to Request No. 17**

Defendant will make the Funk IA available for inspection and copying per a protective order as previously discussed.

- **REQUEST NO. 18**

Any and all internal investigation files of Defendant OFFICER COOPER.

**Response to Request No. 18**

Defendant objects to this request on the grounds that it seeks information not subject to discovery under Rule 26. Defendant has produced Defendant Offers disciplinary records and evaluations and other personnel records in the personnel file for inspection by Plaintiff's counsel, and will make them available for inspection and copying when the Court enters the protective

-40-

1    order, and will likewise make the IA file in this matter available for inspection

2    and copying per the protective order.

3        a.    **Plaintiff's Contention as to Request Nos. 15 through 18**

4            The documents requested are discoverable as they relate to plaintiff's

5    claims, defendant's defenses, and are likely to lead to the discovery of

6    admissible evidence. <u>Kelly v. City of San Jose</u> (1987) 114 FRD 653; <u>Soto v.</u>

7    <u>City of Concord </u>(1995) 162 FRD 603.

8            To date, defendants have failed to provide documents responsive to

9    this request.  Although defendants have allowed defendant to inspect the

10   documents, defendant has not allowed plaintiff to makes copies of any of the

11   documents claiming the intent to seek a protective order.    However,

12   defendants cannot continue to delay complying with discovery by claiming an

13   intent to seek a protective order especially since the law does not support

14   such an excuse for failing to comply.  A party served with a deposition notice

15   or discovery request must obtain a protective order (e.g., a *stay* of the

16   deposition pending hearing on the motion) *before the date set* for the

17   discovery response or deposition. The mere fact that a motion for protective

18   order is pending does not itself excuse the subpoenaed party from making

19   discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him

20   of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir.

21   1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d

22   624, 634].

23           Further, parties withholding documents as privileged should identify

24   and describe the documents in sufficient detail to enable the demanding

25   party "to assess the applicability of the privilege or protection." [FRCP

26   26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under

27   subpoena)].    Boilerplate objections or blanket refusals in response to a

28   FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern &*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir.

2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for

documents withheld on grounds of privilege or work product].   When the

documents were inspected, documents were marked that plaintiff would like

produced.   Since defendants have failed to provide a privilege as to which

documents they intend on seeking a protective order for and no documents

have been produced, plaintiff is unable to determine defendants' intention as

to compliance.

    **b.**    **Defendants' Contention as to Request Nos. 15 through 18**

    This is more of the same cut and paste of conclusory statements.

Defendants' therefore incorporate their extensive response to the contentions

from Request number 1 above.  In addition, a review of the request clearly

demonstrates that the requests seek information well outside the scope of

Plaintiff's claims.  The training matter is adequately addressed in the

Declaration of Gerald Carrigan and Plaintiff's counsel has been given access

to the training materials to confirm the statements in the declaration.  The

officers all meet and exceed all California Peace Officer Standards and

Training and have never been found culpable of any of the allegations made

against them by Plaintiff. Moreover, how does an IA of, for example, of single

car motor vehicle accident and discipline that may arise from the improper

operation of a motor vehicle, relate to an excessive force claim that does not

involve a motor vehicle? What does service of a warrant or searching a

residence have to do with this case?  What does the IA file have to do with the

claims alleged here, particularly where Plaintiff refuses to participate in an IA.

Is Plaintiff just seeking information to use solely for impeachment, which is not

subject to discovery under Rule 26?  Without more than just conclusory

allegations that the information relates to a claim, Plaintiff has not met his

1    burned to compel the information.   The information certainly does not relate to

2    the scope of Plaintiff's claims as Defendants have demonstrated in detail at

3    the beginning of this joint statement.

4    **7.**    **REQUEST NO. 20**

5    Any and all messages sent or received on a mobile digital terminal

6    concerning the INCIDENT or Plaintiff from Defendant Officers or any other officer who

7    responded to the scene of the INCIDENT.

8    • **REQUEST NO. 21**

9    ALL DOCUMENTS EVIDENCING plaintiff's level of intoxication including but

10    not limited to any breathalyzer and blood tests, including result printouts, test protocols,

11    machine calibration logs, reports of analysis, and machine history logs.

12    **Response to Request Nos. 20 and 21**

13    Please see response to request number 1.

14    **a.**    **Plaintiff's Contention as to Request Nos. 20 and 21**

15    Plaintiff has complied with his Rule 26 Disclosure requirements as

16    well as provided responses to interrogatories and request for production of

17    documents, has produced documents, has produced himself for deposition,

18    and defendants have taken plaintiff's physician's deposition.   Defendants

19    need to provide a response based on the information currently available to

20    them.

21    To date, defendants have failed to provide documents responsive to

22    this request.   Although defendants have allowed defendant to inspect the

23    documents, defendant has not allowed plaintiff to makes copies of any of the

24    documents claiming the intent to seek a protective order.   However,

25    defendants cannot continue to delay complying with discovery by claiming an

26    intent to seek a protective order especially since the law does not support

27    such an excuse for failing to comply. A party served with a deposition notice

28    or discovery request must obtain a protective order (e.g., a *stay* of the

1   deposition pending hearing on the motion) *before the date set* for the

2   discovery response or deposition. The mere fact that a motion for protective

3   order is pending does not itself excuse the subpoenaed party from making

4   discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him

5   of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir.

6   1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d

7   624, 634].

8   Further, parties withholding documents as privileged should identify

9   and describe the documents in sufficient detail to enable the demanding

10  party "to assess the applicability of the privilege or protection." [FRCP

11  26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under

12  subpoena)].   Boilerplate objections or blanket refusals in response to a

13  FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern &*

14  *Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir.

15  2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

16  FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for

17  documents withheld on grounds of privilege or work product].   When the

18  documents were inspected, documents were marked that plaintiff would like

19  produced.   Since defendants have failed to provide a privilege as to which

20  documents they intend on seeking a protective order for and no documents

21  have been produced, plaintiff is unable to determine defendants' intention as

22  to compliance.

23  **b.   Defendant's Contention as to Request Nos. 20 and 21**

24  Again, it is difficult to make sense out of this contention, which is the

25  same canned contention asserted for all other contentions. In addition to

26  incorporating their contentions under Request number 1, Defendants content

27  that these request have either been fully complied with or are well beyond the

28  scope of Plaintiff's claims and contentions.   The audio tapes of radio traffic

1    and transcripts thereof have been produced.  Intoxications logs from Butte

2    County jail have been produced.  Police reports indicating the results of

3    presumptive alcohol test at the scene have been produced.  PAS machines to

4    make printouts, so there is no printout to produce.  Defendants have no

5    documents from Butte County jail that have not been produced, and, if there

6    are any other documents, they are not in Defendants' possession, custody, or

7    control. Manuals and the like are not relevant to the claims.  Again, manuals of

8    any machinery used by Butte County jailers are not in Defendants'

9    possession, custody or control, and the manuals and calibration information

10   for the PAS device used at the scene are not part of the facts and

11   circumstances confronting officers on scene, or remotely connected to any of

12   the factual contentions in Plaintiff's third supplemental interrogatory answers in

13   support of his *Monell* claim that are, again, discussed in detail in the nature of

14   the case above.

15   **C.    REQUEST FOR PRODUCTION OF DOCUMENTS TO TOWN OF PARADISE**

16       **1.    REQUEST NO. 1**

17       ALL DOCUMENTS EVIDENCING YOUR contention that any PERSON,

18   other than YOU, contributed to the occurrence of the INCIDENT or the injuries or damages

19   claimed by plaintiff.

20       **Response to Request No. 1**

21       Defendant objects to the request for the following reasons: (1) the

22   definition of the term "evidencing" is vague and ambiguous in that it requires

23   Defendant to speculate about the associations between discoverable

24   evidence and the acts and omissions at issue in the case; (2) the request is

25   vague and ambiguous to the extent it requires speculation about the injuries

26   and damages being claimed by Plaintiff because Plaintiff has not complied

27   with his Rule 26 disclosures requirements or produced discoverable

28   information lawfully requested of him in this case; (3) the request seeks

information that is confidential and subject to disclosure only pursuant to the terms of a protective order agreed to by counsel and/or imposed by the Court.

Subject to its objections, Defendant will (and has) produced documents in its possession, custody, or control regarding the facts and circumstances surrounding the foot pursuit and arrest of Plaintiff Harold Funk, including the audiotapes of the 911 calls to dispatch, the police reports, and the audiotapes made by Officers Cooper and Pickering (including a transcript of the audiotapes).   Defendant also produced confidential files for inspection by Plaintiff's counsel pursuant to a protective order agreed to by counsel pending a protective order being entered by the Court, and will make those files and documents available for further inspection and copying per the terms of a protective order the parties will seek from the Court.

### a.   Plaintiff's Contention as to Request No. 1

Plaintiff has complied with his Rule 26 Disclosure requirements as well as provided responses to interrogatories and request for production of documents, has produced documents, has produced himself for deposition, and defendants have taken plaintiff's physician's deposition.   Defendants need to provide a response based on the information currently available to them.

To date, defendants have failed to provide documents responsive to this request.   Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order.   However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply.  A party served with a deposition notice

1
2
3
4
5
6
7
8

or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before* the date *set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under subpoena)]. Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir. 2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185 FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for documents withheld on grounds of privilege or work product]. When the documents were inspected, documents were marked that plaintiff would like produced. Since defendants have failed to provide a privilege as to which documents they intend on seeking a protective order for and no documents have been produced, plaintiff is unable to determine defendants' intention as to compliance.

24

**b.** **Defendant's Contention as to Request No.1**

25
26
27
28

This is identical to the interrogatory propounded to the officers discussed earlier as Request number 1 and is the same canned contentions. Defendants response is the same too and is incorporated from Request 1 above.

1    **2.    REQUEST NO. 2**

2         ALL DOCUMENTS EVIDENCING YOUR contention that Plaintiff was not

3    injured in the INCIDENT.

4         • **REQUEST NO. 3**

5          ALL DOCUMENTS EVIDENCING YOUR contention that the injuries or the

6    extent of the injuries claimed by Plaintiff were not caused by the INCIDENT.

7         • **REQUEST NO. 4**

8         Any and all DOCUMENTS EVIDENCING all physical evidence seized,

9    viewed, or photographed relating in any way to the INCIDENT described in Plaintiff's

10   COMPLAINT.

11        • **REQUEST NO. 5**

12        Any and all DOCUMENTS EVIDENCING the result of any police

13   examinations, analysis, or tests on physical evidence relating in any way to the INCIDENT

14   described in Plaintiff's COMPLAINT.

15        • **REQUEST NO. 7**

16        Any and all general investigative reports, including internal investigations of

17   civilian complaints arising out of the INCIDENT.

18        • **REQUEST NO. 9**

19        Any and all written or otherwise recorded statements of witnesses to the

20   INCIDENT, including but not limited to the Defendant Officers involved in the INCIDENT.

21        **Response to Request Nos. 2 through 5; 7 and 9**

22        Please see response to request number 1.

23        **a.    Plaintiff's Contention as to Request Nos. 2 through 5; 7 and 9**

24        Plaintiff has complied with his Rule 26 Disclosure requirements as

25        well as provided responses to interrogatories and request for production of

26        documents, has produced documents, has produced himself for deposition,

27        and defendants have taken plaintiff's physician's deposition.   Defendants

28

need to provide a response based on the information currently available to them.

To date, defendants have failed to provide documents responsive to this request. Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order. However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply. A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under subpoena)]. Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir. 2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185 FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for documents withheld on grounds of privilege or work product]. When the documents were inspected, documents were marked that plaintiff would like

1    produced. Since defendants have failed to provide a privilege as to which

2    documents they intend on seeking a protective order for and no documents

3    have been produced, plaintiff is unable to determine defendants' intention as

4    to compliance.

5          **b.**    **Defendant's Contention as to Request Nos. 2 through 5; 7 and 9**

6          This is again the same canned contentions and Defendants assert the

7    same response to them from their response to Request number 1 above. In

8    addition, they note that the information sough concerns Plaintiff's alleged

9    injuries during the arrest for which he has failed to produce medical records

10    and the causal effect of his prior injuries for which medical records have not

11    been produced as mandated under Rule 26. The property sheet and

12    photographs requested have been produced and all non-privileged statements

13    by officers have been produced in the form of audio recordings and transcripts

14    thereof, as well as police reports and booking sheets. The remaining

15    documents requested fall, are, again, not within the scope of the claims. Post-

16    arrest investigations or tests are not within the scope of the Fourth

17    Amendment, as the scope of that claim are the facts and circumstances

18    confronting the officers on scene and not information obtained thereafter. Nor

19    is the information within the scope of the contentions regarding the *Monell*

20    claim that are set forth in Plaintiff's third supplemental responses. Plaintiff is

21    therefore required to make a showing of good cause to obtain any additional

22    information, but he did not make that request or required showing to the court.

23       **3.**    **REQUEST NO. 10**

24          Any and all written or otherwise recorded statements of Defendant HAROLD

25 ANTHONY FUNK, including the notes taken by the interviewer.

26       **Response to Request No. 10**

27          Please see response to request number 1. In addition, Defendant objects to

28    this request because it is vague and ambiguous in that the Town of Paradise

is a fictitious legal entity and not a person who can be interviewed. Defendant will, subject to protective order, produce the file of the IA in this matter, which contains the witness interviewed concerning this matter, and has already produced the file for inspection by Plaintiff's counsel pending entry of a protective order by the Court.

### a.   Plaintiff's Contention as to Request No. 10

To date, defendants have failed to provide documents responsive to this request. Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order. However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply. A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under subpoena)]. Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir.

1   2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

2   FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for

3   documents withheld on grounds of privilege or work product].   When the

4   documents were inspected, documents were marked that plaintiff would like

5   produced.   Since defendants have failed to provide a privilege as to which

6   documents they intend on seeking a protective order for and no documents

7   have been produced, plaintiff is unable to determine defendants' intention as

8   to compliance.

9       **b.   Defendant's Contention as to Request No. 10**

10      This, again, is the same interrogatory discussed earlier only

11  propounded to the Town instead of the officers. Plaintiffs contentions are the

12  same and so are Defendants. All of the written or recorded statements made

13  by Harold Funk have been produced.

14  **4. REQUEST NO. 12**

15      Any  and  all  materials,  orders,  reports,  memoranda,  summaries,  and

16  complaints concerning the INCIDENT.

17      **Response to Request No. 12**

18      Please see response to request number 1.

19      **a.   Plaintiff's Contention as to Request No. 12**

20      To date, defendants have failed to provide documents responsive to

21  this request.   Although defendants have allowed defendant to inspect the

22  documents, defendant has not allowed plaintiff to makes copies of any of the

23  documents claiming the intent to seek a protective order.   However,

24  defendants cannot continue to delay complying with discovery by claiming an

25  intent to seek a protective order especially since the law does not support

26  such an excuse for failing to comply. A party served with a deposition notice

27  or discovery request must obtain a protective order (e.g., a *stay* of the

28  deposition pending hearing on the motion) *before the date set* for the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under subpoena)]. Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir. 2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185 FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for documents withheld on grounds of privilege or work product]. When the documents were inspected, documents were marked that plaintiff would like produced. Since defendants have failed to provide a privilege as to which documents they intend on seeking a protective order for and no documents have been produced, plaintiff is unable to determine defendants' intention as to compliance.

**b.** **Defendant's Contention as to Request No. 12**

Plaintiff asserts the same contentions and so does Defendant. All non-privileged materials have been produced as previously discussed, including the audio recordings and transcripts therefore, police reports, booking sheets and photos, medical intake screening forms, property sheet, and intoxication log. Materials prepared by Defendants' counsel and communications with attorney-client have not been produced, nor have the other materials at the

1     heart of the dispute because they do not fall within the boundaries of

2     permissible discovery under Rule 26.

3     **5.    REQUEST NO. 13**

4     All information contained in the records or in computer(s) that were/are

5  maintained by the Internal Affairs Division of the TOWN OF PARADISE police department

6  or any other division of the TOWN OF PARADISE concerning complaints made against

7  the Defendant Officers.

8     **Response to Request No. 13**

9     Defendant objects to this request on the grounds that it seeks information

10    not subject to discovery under Rule 26 to the extent that it seeks information

11    about complaints that were not sustained or that are not similar to the

12    complaints made by Harold Funk in this case.  Defendant has produced

13    Defendant Officers disciplinary records for inspection by Plaintiff's counsel,

14    and will make them available for inspection and copying when the Court

15    enters the protective order, and will likewise make the IA file in this matter

16    available for inspection and copying per the protective order.

17    • **REQUEST NO. 14**

18    Any and all DOCUMENTS relating to injuries sustained by any civilian

19  during or as a result of an arrest or detention conducted by Defendant OFFICER

20  COOPER.

21    **Response to Request No. 14**

22    Defendant objects to this request on the grounds that it seeks information not

23    subject to discovery under Rule 26 to the extent that it seeks information

24    about arrests or detention of citizens for which no complaint was filed or

25    sustained.  Defendant has produced Defendant Officers disciplinary records

26    for inspection by Plaintiff's counsel, and will make them available for

27    inspection and copying when the Court enters the protective order, and will

28

1    likewise make the IA file in this matter available for inspection and copying

2    per the protective order.

3    **a.    Plaintiff's Contention as to Request Nos. 13 and 14**

4          The documents requested are discoverable as they relate to plaintiff's

5    claims, defendant's defenses, and are likely to lead to the discovery of

6    admissible evidence. Kelly v. City of San Jose (1987) 114 FRD 653; Soto v.

7    City of Concord (1995) 162 FRD 603.

8          To date, defendants have failed to provide documents responsive to

9    this request. Although defendants have allowed defendant to inspect the

10   documents, defendant has not allowed plaintiff to makes copies of any of the

11   documents claiming the intent to seek a protective order.    However,

12   defendants cannot continue to delay complying with discovery by claiming an

13   intent to seek a protective order especially since the law does not support

14   such an excuse for failing to comply. A party served with a deposition notice

15   or discovery request must obtain a protective order (e.g., a *stay* of the

16   deposition pending hearing on the motion) *before the date set* for the

17   discovery response or deposition. The mere fact that a motion for protective

18   order is pending does not itself excuse the subpoenaed party from making

19   discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him

20   of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir.

21   1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d

22   624, 634].

23         Further, parties withholding documents as privileged should identify

24   and describe the documents in sufficient detail to enable the demanding

25   party "to assess the applicability of the privilege or protection." [FRCP

26   26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under

27   subpoena)].    Boilerplate objections or blanket refusals in response to a

28   FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern &*

1   *Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir.

2   2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

3   FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for

4   documents withheld on grounds of privilege or work product].   When the

5   documents were inspected, documents were marked that plaintiff would like

6   produced.   Since defendants have failed to provide a privilege as to which

7   documents they intend on seeking a protective order for and no documents

8   have been produced, plaintiff is unable to determine defendants' intention as

9   to compliance.

10          **b.      Defendant's Contention as to Request Nos. 13 and 14**

11                 This dispute, again, is identical to all previous dispute in that Plaintiff

12   has asserted conclusory allegations of entitlement to discovery without

13   attempting to show the court how or why the material falls within the scope of

14   permissible discovery under Rule 26, or without asking the court to expand the

15   scope of Rule 26 discovery and making the required showing. Moreover, the

16   Declaration of Gerald Carrigan and information briefed above under the nature

17   of the case, clearly establish that this information is either well outside the

18   scope of the claims being advanced. And again, no request or showing has

19   been made to extend the scope of discovery to this material.

20   **6.      REQUEST NO. 15**

21                 All records, interviews, memoranda, or other documents contained in or

22   made part of the personnel record or file of Defendant OFFICER COOPER that were

23   and/or are currently maintained by the TOWN OF PARADISE police department, including

24   but not limited to complaints concerning his conduct as a police officer and law

25   enforcement officer, disciplinary or internal law enforcement review of his activities as a

26   police officer or law enforcement officer, performance evaluations, and psychiatric

27   evaluations.

28

**Response to Request No. 15**

Defendant has produced Defendant Officers disciplinary records and evaluations and other personnel records in the personnel file for inspection by Plaintiff's counsel, and will make them available for inspection and copying when the Court enters the protective order, and will likewise make the IA file in this matter available for inspection and copying per the protective order. Defendant will not comply with the request for any psychiatric evaluations as they are not subject to discover under Rule 26.

a.      **Plaintiff's Contention as to Request No. 15**

The documents requested are discoverable as they relate to plaintiff's claims, defendant's defenses, and are likely to lead to the discovery of admissible evidence. Kelly v. City of San Jose (1987) 114 FRD 653; Soto v. City of Concord (1995) 162 FRD 603.

To date, defendants have failed to provide documents responsive to this request. Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order. However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply. A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

1    Further, parties withholding documents as privileged should identify

2    and describe the documents in sufficient detail to enable the demanding

3    party "to assess the applicability of the privilege or protection." [FRCP

4    26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under

5    subpoena)].   Boilerplate objections or blanket refusals in response to a

6    FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern &*

7    *Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir.

8    2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

9    FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for

10   documents withheld on grounds of privilege or work product].   When the

11   documents were inspected, documents were marked that plaintiff would like

12   produced.  Since defendants have failed to provide a privilege as to which

13   documents they intend on seeking a protective order for and no documents

14   have been produced, plaintiff is unable to determine defendants' intention as

15   to compliance.

16       **b.    Defendant's Contention as to Request No. 15**

17       In addition to Defendants earlier response to Plaintiff's canned

18   contentions, Defendants have demonstrated through the briefing in the nature

19   of the case above and declaration of Gerald Carrigan that this information is

20   not within the scope of the claims advanced by Plaintiff. There is absolutely no

21   basis to discover an officers personal medical or psychiatric files – none other

22   than harassment.

23   **7.    REQUEST NO. 17**

24       Any and all training records of Defendant OFFICER COOPER, including but

25   not limited to use of force, serving search warrants, conducting search of a residence,

26   and detaining or arresting individuals.

27

28

1

**Response to Request No. 17**

2       Please see response to request number 1.  The training records were made

3       available to Plaintiff's counsel for inspection and will be made available for

4       inspection and copying per a protective order as previously discussed.

5   •   **REQUEST NO. 18**

6       Any and all DOCUMENTS EVIDENCING any internal investigation into

7   Plaintiff's COMPLAINT arising from the INCIDENT.

8       **Response to Request No. 18**

9       Please see response to request no. 1. Defendant will make the Funk IA

10      available for inspection and copying per a protective order as previously

11      discussed.

12  •   **REQUEST NO. 19**

13      The entire internal investigation file of the INCIDENT.

14      **Response to Request No. 19**

15      Defendant will make the Funk IA available for inspection and copying per a

16      protective order as previously discussed.

17  •   **REQUEST NO. 20**

18      Any and all internal investigation files of Defendant OFFICER COOPER.

19      **Response to Request No. 20**

20      Defendant objects to this request on the grounds that it seeks information not

21      subject to discovery under Rule 26. Defendant has produced Defendant

22      Offers disciplinary records and evaluations and other personnel records in

23      the personnel file for inspection by Plaintiff's counsel, and will make them

24      available for inspection and copying when the Court enters the protective

25      order, and will likewise make the IA file in this matter available for inspection

26      and copying per the protective order.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

a.   **Plaintiff's Contention as to Request Nos. 17 through 20**

The documents requested are discoverable as they relate to plaintiff's claims, defendant's defenses, and are likely to lead to the discovery of admissible evidence. Kelly v. City of San Jose (1987) 114 FRD 653; Soto v. City of Concord (1995) 162 FRD 603.

To date, defendants have failed to provide documents responsive to this request.  Although defendants have allowed defendant to inspect the documents, defendant has not allowed plaintiff to makes copies of any of the documents claiming the intent to seek a protective order.   However, defendants cannot continue to delay complying with discovery by claiming an intent to seek a protective order especially since the law does not support such an excuse for failing to comply.  A party served with a deposition notice or discovery request must obtain a protective order (e.g., a *stay* of the deposition pending hearing on the motion) *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

Further, parties withholding documents as privileged should identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection." [FRCP 26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under subpoena)].   Boilerplate objections or blanket refusals in response to a FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern & Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir. 2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

1    FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for

2    documents withheld on grounds of privilege or work product]. When the

3    documents were inspected, documents were marked that plaintiff would like

4    produced. Since defendants have failed to provide a privilege as to which

5    documents they intend on seeking a protective order for and no documents

6    have been produced, plaintiff is unable to determine defendants' intention as

7    to compliance.

8         **b.    Defendant's Contention as to Request Nos. 17 through 20**

9         This is again the same canned, conclusory contentions that are well

10   beyond the scope of the claims being advanced. The response was made

11   before Plaintiff served his third amended interrogatory answers and negated

12   his right to the discovery under Rule 26 within the past 30 days as previously

13   discussed in the nature of the case above.

14   **8.   REQUEST NO. 23**

15   ALL DOCUMENTS EVIDENCING plaintiff's level of intoxication including but

16   not limited to any breathalyzer and blood tests, including result printouts, test protocols,

17   machine calibration logs, reports of analysis, and machine history logs.

18        **Response to Request Nos. 23**

19   Please see response to request number 1.

20        **a.    Plaintiff's Contention as to Request Nos. 23**

21        Plaintiff has complied with his Rule 26 Disclosure requirements as

22   well as provided responses to interrogatories and request for production of

23   documents, has produced documents, has produced himself for deposition,

24   and defendants have taken plaintiff's physician's deposition.    Defendants

25   need to provide a response based on the information currently available to

26   them.

27        To date, defendants have failed to provide documents responsive to

28   this request.  Although defendants have allowed defendant to inspect the

1   documents, defendant has not allowed plaintiff to makes copies of any of the

2   documents claiming the intent to seek a protective order.   However,

3   defendants cannot continue to delay complying with discovery by claiming an

4   intent to seek a protective order especially since the law does not support

5   such an excuse for failing to comply.  A party served with a deposition notice

6   or discovery request must obtain a protective order (e.g., a *stay* of the

7   deposition pending hearing on the motion) *before the date set* for the

8   discovery response or deposition. The mere fact that a motion for protective

9   order is pending does not itself excuse the subpoenaed party from making

10  discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him

11  of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir.

12  1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d

13  624, 634].

14       Further, parties withholding documents as privileged should identify

15  and describe the documents in sufficient detail to enable the demanding

16  party "to assess the applicability of the privilege or protection." [FRCP

17  26(b)(5); and see FRCP 45(d)(2)(A) (applicable to documents withheld under

18  subpoena)].    Boilerplate objections or blanket refusals in response to a

19  FRCP 34 request are insufficient to assert a privilege. [*Burlington Northern &*

20  *Santa Fe Ry. Corp. v. United States Dist. Court for Dist. of Montana* (9th Cir.

21  2005) 408 F3d 1142, 1148; *Etienne v. Wolverine Tube, Inc.* (D KS 1999) 185

22  FRD 653, 656—Rule 26(b)(5)(A) requires parties to provide privilege log for

23  documents withheld on grounds of privilege or work product]. When the

24  documents were inspected, documents were marked that plaintiff would like

25  produced. Since defendants have failed to provide a privilege as to which

26  documents they intend on seeking a protective order for and no documents

27  have been produced, plaintiff is unable to determine defendants' intention as

28  to compliance.

1

**b.    Defendant's Contention as to Request Nos. 23**

These are the same interrogatories propounded to the officers discussed earlier and the parties' contentions are identical.

**D.    INTERROGATORIES TO TOWN OF PARADISE**

**1.    Plaintiff's Contentions**

Defendant's response was untimely.  Defendant's response to the discovery was due October 25, 2010 (last extension) but were not served until December 14, 2010 (this is not even proper service as they were just emailed to us on a disc containing 100 documents unlabeled with no proof of service).  ***Therefore, defendant has waived all objections***.  Absent extension or good cause, failure to timely respond to interrogatories generally constitutes a *waiver* of any objections thereto.  FRCP 33(b)(4); *Davis v. Fendler* (9th Cir. 1981) 650 F2d 1154, 1160; *Starlight Int'l, Inc. v. Herlihy* (D KS 1998) 181 FRD 494, 497; *Coregis Ins. Co. v. Baratta & Fenerty, Ltd.* (ED PA 1999) 187 FRD 528, 529. The waiver includes objections based on *privilege*.  *Starlight Int'l, Inc. v. Herlihy*, supra, 181 FRD at 498.

Since defendant's response was untimely and, thus, has waived all objections, defendant's has waived his objection to the discovery exceeding the number allowed under FRCP Rule 34(a)(1).  However, just to address this issue:  A single question asking for several bits of information relating to the *same topic* counts as one interrogatory.  *Safeco of America v. Rawstrom* (CD CA 1998) 181 FRD 441, 445 – subparts count as one interrogatory "if they are logically or factually subsumed within and necessarily related to" primary question.

**2.    Defendants' Contentions**

None provided.

**3.    INTERROGATORY NO. 1**

State the name, rank, and identification number of each individual police officer, agent, or employee of the TOWN OF PARADISE who was in any manner involved in the incident described in Plaintiff's COMPLAINT from the first contact with the police

1  until Plaintiff was released from custody, including but not limited to the identity of any
2  officer, dispatcher, jailer, supervisor, or other individual who came into contact with the
3  Plaintiff or the events described in the COMPLAINT, whether or not the individual was an
4  arresting officer or officer on the scene.

5              **Response to Interrogatory No. 1**

6              Objections:  (1 the interrogatory assumes facts not in evidence and lacks
7              foundation in that it assumes the "incident" and "events" described in the
8              Complaint actually occurred as alleged; (2) is it vague and ambiguous
9              because the Complaint describes more than one alleged incident but the
10             interrogatory does not identify which incident; and (3) the interrogatory is
11             vague and ambiguous because it requests information about individuals
12             who "came into contact…with the events described in the COMPLAINT" and
13             the individuals do not "come into contact with" events.   Subject to its
14             objections, Dispatch Jenny Jones, and Officers Pickering, Cooper, and
15             Rhymes were the employees who were involved in the 911 call and arrest of
16             Harold Funk.

17    **a.      Plaintiff's Contention as to Interrogatory No. 1**

18             The response to this interrogatory is incomplete as it fails to provide
19    names of those persons at the jail the night plaintiff was booked who came in
20    contact with plaintiff.

21    **b.      Defendant's Contention as to Interrogatory No. 1**

22             Defendants provided the information they have, including the jail
23    records. That is all of the information they have and any additional information
24    should be obtained from Butte County employees on duty at the jail that
25    evening.

26

27

28

1

**4.** **INTERROGATORY NO. 3**

Has any investigation into the INCIDENT been conducted by the internal affairs division of the department or by any other officer, employee, or department of the TOWN OF PARADISE?  If so, please state and describe:

(a)  the nature and substance of the said investigation, including but not limited to the identify of each individual or witness who was interviewed or consulted during said investigation, setting forth the nature and contents of any statement given by said individual and the outcome of said investigation, including both the decision rendered and any and all disciplinary actions or other consequences that followed as a result therefrom.

(b)  any reports, memoranda, summaries, photographs, videos, or audiotapes or physical evidence and/or documents produced, generated, or collected during said investigation.

**Response to Interrogatory No. 3**

Objections:  (1) compound.  Subject to its objection, yes, an internal affairs investigation was completed regarding the arrest of Harold Funk.  The information may be obtained from the Harold Funk Internal Affair Investigation file.  That file has been produced to Plaintiff's counsel for inspection under an agreement not to disclose its contents until the Court enters a protective order to be sought by the parties, and copies of the portion of the file selected by Plaintiff's counsel will be provided pursuant to the terms of the protective order.

**a.** **Plaintiff's Contention as to Interrogatory No. 3**

As to finding discoverable information responsive to this request by reviewing the Internal Affair Investigation file:  An answer to an interrogatory should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories.  *Scaife v. Boenne* (ND IN 2000) 191 FRD 590, 594; *Continental Ill. Nat'l Bank & Trust*

1   Co. of Chicago v. Caton (D KS 1991) 136 FRD 682, 686.  Further, it is bad

2   faith to advise plaintiff that information is contained in documents that have

3   not been produced.  Defendant is withholding documents claiming protection

4   by a protective order that has not been filed.  Although defendant intends to

5   seek a protective order, a party served with a deposition notice or discovery

6   request must obtain a protective order *before the date set* for the discovery

7   response or deposition. The mere fact that a motion for protective order is

8   pending does not itself excuse the subpoenaed party from making discovery:

9   "(I)t is for the court, not the deponent or his counsel, to relieve him of the

10  duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964)

11  333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624,

12  634].

13      **b.    Defendant's Contention as to Interrogatory No. 3**

14      This response was served before Plaintiff served his third supplemental

15  interrogatory answers regarding his *Monell* claim after this motion was filed.

16  For the reasons previously discussed, the information is not within the scope

17  of the claims being advanced, and no showing or request has been made to

18  extend discovery.  Moreover, Rule 33(d) permits the responding party to

19  identify business records from which the answer to interrogatory may be

20  obtained.  He burden of reviewing and summarizing the information is the

21  same for both parties, though the information is not relevant to the newest

22  contention Plaintiff has made regarding his *Monell* claim, and post-arrest

23  information is irrelevant to his Fourth Amendment claim as previously

24  discussed.  Again, just because he files suit does not give him a wholesale

25  license to obtain any discovery he wants.

26      **5.    INTERROGATORY NO. 4**

27      Do you contend that the force used by Defendant Officers against Plaintiff

28  was reasonable and/or necessary?  If so, state and describe:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(a) all facts and witnesses that support the use of force by said Defendant;

(b) each TOWN OF PARADISE police department policy or procedure that authorized such use of force.

### Response to Interrogatory No. 4

Objections: (1) compound. Subject to its objection, yes, Defendants contend that the use of force was reasonable under the circumstances. (a) the information that may be responsive to this request may be determined by reviewing the police reports, audio recording of the 911 calls, audio recordings of radio traffic on the call, audio recordings made by Officers Pickering and Cooper regarding the call, the transcripts of the officers' audio recordings, and the transcripts of criminal trial testimony used as exhibits to the depositions of Officer Pickering and Officer Cooper in this case. (b) see Paradise Police Department Police Manual, Section 300.

### a. Plaintiff's Contention as to Interrogatory No. 4

An answer to an interrogatory should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories. *Scaife v. Boenne* (ND IN 2000) 191 FRD 590, 594; *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton* (D KS 1991) 136 FRD 682, 686.

### b. Defendant's Contention as to Interrogatory No. 4

This response is proper under Rule 34(d) and the documents have been produced. The issue is what facts and circumstances confronted the officers on scene and that is reflected in the documents produced that can just as easily be reviewed and summarized by Plaintff's counsel. Moreover, the policies are in the policy manual previously produced.

**6.   INTERROGATORY NO. 5**

Was training provided by the TOWN OF PARADISE to Defendant Officers as to (1) making arrests; (2) the use of force (including when force should be used, how much force, techniques and instruments of force); (3) police abuse and misconduct; (4) state, federal, and constitutional law? If so, state and describe:

(a)   the nature and substance of said training, including the identity of each instructor, lecturer, or teacher who administered said training and the dates of said training;

(b)   any materials, manuals, guidebooks, course outlines, brochures, regulations, charts, films, audiotapes, or other audiovisual material or teaching aids used in said training.

**Response to Interrogatory No. 5**

Objections: (1) compound. (2) the terms used in items (3) and (4) are vague and ambiguous. Subject to its objections, Defendants respond that all of its officers are POST certified and receive training in excess of what is required by state or federal law. They are trained on the policies and procedures set forth in the Paradise Police Department Police Manual. Additional information responsive to this interrogatory may be obtained from the personnel and training files for Officer Cooper and Officer Pickering, which files have been produced to Plaintiff's counsel for inspection under an agreement not to disclose their contents until the Court enters a protective order to be sought by the parties, and copies of the portion of the files selected by Plaintiff's counsel will be provided pursuant to the terms of the protective order.

**a.   Plaintiff's Contention as to Interrogatory No. 5**

An answer to an interrogatory should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories. *Scaife v. Boenne* (ND IN 2000) 191 FRD 590, 594;

1   *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton* (D KS 1991) 136

2   FRD 682, 686.  Further, it is bad faith to advise plaintiff that information is

3   contained in documents that defendant refuses to produce.  Defendant is

4   withholding documents claiming protection by a protective order that has not

5   been filed.  Although defendant intends to seek a protective order, a party

6   served with a deposition notice or discovery request must obtain a protective

7   order *before the date set* for the discovery response or deposition. The mere

8   fact that a motion for protective order is pending does not itself excuse the

9   subpoenaed party from making discovery: "(I)t is for the court, not the

10  deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines*

11  *Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also

12  *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

13         **b.    Defendant's Contention as to Interrogatory No. 5**

14         This answer is responsive and appropriate, as are the objections that

15  Plaintiff does not challenge. The delay in moving the protective is falls on

16  Plaintiff's shoulders for failing to timely discharge his part of the agreement to

17  provide the information necessary to prepare and apply for a joint protective

18  order per counsel agreement.  He cannot backtrack and claim Defendants

19  delayed getting a protective order and simply ignore his role in the delay. And,

20  again, since Plaintiff supplemented his interrogatory answers after filing this

21  motion, this material is no longer within the scope of the claims he is

22  advancing for the reason set forth in the Declaration of Gerald Carrigan and

23  briefed in the nature of the case above.

24  **7.    INTERROGATORY NO. 6**

25         If the answer to No. 5 is "yes," was the training identified supplemented by

26  in-service training by the TOWN OF PARADISE?  If so, state and describe:

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(a)     the nature and substance of said training, including the identity of each instructor, lecturer, or teacher who administered said training and the dates of said training;

(b)     any materials, manuals, guidebooks, course outlines, brochures, regulations, charts, films, audiotapes, or other audiovisual material or teaching aids used in said training.

**Response to Interrogatory No. 6**

Objections: (1) compound.  Subject to its objections, Defendants respond that all of its officers are POST certified and receive training in excess of what is required by state or federal law.  They are trained on the policies and procedures set forth in the Paradise Police Department Police Manual. Additional information responsive to this interrogatory may be obtained from the personnel and training files for Officer Cooper and Officer Pickering, which files have been produced to Plaintiff's counsel for inspection under an agreement not to disclose their contents until the Court enters a protective order to be sought by the parties, and copies of the portion of the files selected by Plaintiff's counsel will be provided pursuant to the terms of the protective order.

**a.     Plaintiff's Contention as to Interrogatory No. 6**

An answer to an interrogatory should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories.     *Scaife v. Boenne* (ND IN 2000) 191 FRD 590, 594; *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton* (D KS 1991) 136 FRD 682, 686.  Further, it is bad faith to advise plaintiff that information is contained in documents that defendant refuses to produce.   Defendant is withholding documents claiming protection by a protective order that has not been filed.  Although defendant intends to seek a protective order, a party served with a deposition notice or discovery request must obtain a protective

1

2

3

4

5

6

order *before the date set* for the discovery response or deposition. The mere fact that a motion for protective order is pending does not itself excuse the subpoenaed party from making discovery: "(I)t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." [*Pioche Mines Consolidated, Inc. v. Dolman* (9th Cir. 1964) 333 F2d 257, 269; see also *F.A.A. v. Landy* (2nd Cir. 1983) 705 F2d 624, 634].

7

   **b.** **Defendant's Contention as to Interrogatory No. 6**

8

9

10

11

12

13

14

15

16

17

18

   The issues here are the same as in the previous interrogatory. This answer is responsive and appropriate, as are the objections that Plaintiff does not challenge. The delay in moving the protective is falls on Plaintiff's shoulders for failing to timely discharge his part of the agreement to provide the information necessary to prepare and apply for a joint protective order per counsel agreement.  He cannot backtrack and claim Defendants delayed getting a protective order and simply ignore his role in the delay.  And, again, since Plaintiff supplemented his interrogatory answers after filing this motion, this material is no longer within the scope of the claims he is advancing for the reason set forth in the Declaration of Gerald Carrigan and briefed in the nature of the case above.

19

**8.**   **INTERROGATORY NO. 7**

20

21

   Has Defendant Officers been the subject of a police department investigation or other investigation or citizen complaint?  If so, please identify and describe:

22

23

   (a)   the date of each incident or complaint, the identify of the complainant, and the subject matter of the investigation;

24

25

26

   (b) the outcome of that investigation, including both the decision rendered and any disciplinary action or other consequences that followed as a result

   (c)   thereof.

27

28

1            **INTERROGATORY NO. 8**

2           Except for this action, in the past 10 years has anyone filed a civil action
3   against TOWN OF PARADISE, its police department, and/or any individual police officers
4   of the TOWN OF PARADISE for violation of civil rights during an arrest, detainment, or
5   service of a search warrant, including but not limited to excessive force?  If so, for each
6   civil action:

7                  (a) state the name, address and telephone number of each person who filed
8                  the lawsuit;

9                  (b) state the court, name of the parties, and the case number of the civil
10                 action;

11                 (c) state the name, address, and telephone number of any attorney
12                 representing Defendant;

13                 (d) state whether the action has been resolved or is still pending.

14           **INTERROGATORY NO. 9**

15          State whether the TOWN OF PARADISE has ever referred any instance of
16  police conduct or misconduct to the prosecuting attorney's office for prosecution.  If the
17  answer is yes, for cases that occurred within the last ten years, state the name and
18  departmental serial number (DSN) of each officer involved in each such incident, and date
19  of each incident so referred.

20                 (a) state the name, address and telephone number of each person who filed
21                 the lawsuit;

22                 (b) state the court, name of the parties, and the case number of the civil
23                 action;

24                 (c) state the name, address, and telephone number of any attorney
25                 representing Defendant;

26                 (d) state whether the action has been resolved or is still pending.

27

28

1

- **INTERROGATORY NO. 10**

2   In the past 10 years, has the TOWN OF PARADISE or its police department
3   received any citizen complaints against an officer of the department alleging a violation of
4   civil rights during an arrest, detainment, or service of a search warrant, including but not
5   limited to excessive force?  If so, for each please identify and describe:

6   (a) the nature, substance, and description of each complaint;

7   (b) the name, address, and telephone number of each complainant.

8

- **INTERROGATORY NO. 11**

9   What information, if any, did Defendant Officers have or know at the time
10   they were dispatched to the scene of the INCIDENT?

11

- **INTERROGATORY NO. 12**

12   Did Plaintiff strike, threaten to strike, or otherwise offer violence to
13   Defendant Officers or the other responding officers?  If so, please describe Plaintiff's
14   conduct and set forth, verbatim or otherwise, the contents of any statements Plaintiff
15   made.

16

- **INTERROGATORY NO. 13**

17   Identify each denial of a material allegation and each special or affirmative
18   defense in your pleadings and for each:  (a) state all facts upon which you base the denial
19   or special or affirmative defense; (b) state the names, addresses, and telephone numbers
20   of all persons who have knowledge of those facts; and (c) identify all documents and other
21   tangible things that support your denial or special or affirmative defense, and state the
22   name, address, and telephone number of the person who has each document.

23

**Response to Interrogatory Nos. 7 through 13**

24   Objection, this interrogatory is compound and exceeds the number of
25   interrogatories that may be propounded to a party under the Federal Rules of
26   Civil Procedure.

27

28

1         **a.**    **Plaintiff's Contention as to Interrogatory Nos. 7 through 13**

2             Since defendant's response was untimely and, thus, defendant has

3         waived all objections, defendant's has waived his objection to the discovery

4         exceeding the number allowed under FRCP Rule 34(a)(1).

5         **b.**    **Defendant's Contention as to Interrogatory Nos. 7 through 13**

6             The delay in providing the written response was for good cause as

7         discussed in A above. Further, there is no excuse for Plaintiff to disregard the

8         clear mandate of the Rule that limits interrogatories to 25, including subparts,

9         and propound in excess of 65 sperate questions disguised a single

10         interrogatory.

11   **E.**    **INTERROGATORIES TO PICKERING and COOPER**

12       **1.**    **INTERROGATORY NO. 1**

13             State your full name, residence address, business address, date and place

14   of birth, height, weight, employer, badge number, and DSN.

15         **Response to Interrogatory No. 1**

16         Objections: (1) compound; (2) vague and ambiguous as to the meaning of

17         the acronym "DSN," which is not defined; (3) vague and ambiguous as to

18         time with respect to Responding Party's height and weight; (4) Responding

19         Party's residence address, and date and place of birth are beyond the scope

20         of discovery permitted by Rule 26 of the Federal Rules of Civil Procedure.

21         Responding Party's business address is 5595 Black Olive Drive, Paradise,

22         California. The remaining discoverable information may be determined by

23         examining the following: (a) transcript of August 6, 2010 deposition of

24         Responding Party; and (2) deposition Exhibit 15).

25         **a.**    **Plaintiff's Contention to Interrogatory No. 1**

26             Definition of "DSN:" Department Serial Number. Time for height and

27         weight is at the time of the incident. As to finding remaining discoverable

28         information by reviewing Pickering's deposition transcript: An answer to an

1   interrogatory should be complete in itself and should not refer to the

2   pleadings, or to depositions or other documents, or to other interrogatories.

3   *Scaife v. Boenne* (ND IN 2000) 191 FRD 590, 594; *Continental Ill. Nat'l Bank*

4   *& Trust Co. of Chicago v. Caton* (D KS 1991) 136 FRD 682, 686.

5       **b.    Defendant's Contention to Interrogatory No. 1**

6       The definitions are not provided in the interrogatory and the height

7   weight restriction is not either.  Plaintiff simply adding them here and seeking

8   to compel based upon the new materials.  The objections as stated are well

9   taken, and the remaining answer is proper.  Plaintiff has not made showing

10  otherwise, but simply made conclusory legal statements.  The information is

11  also outside the scope of Rule 26 discovery as utterly irrelevant to the claims

12  being asserted.

13      **2.    INTERROGATORY NO. 2**

14      State the name, address, and years of attendance and graduation for each

15  school you have attended, starting with high school and including college, junior college,

16  technical school, and all law enforcement training, including any seminar or training that

17  might be characterized as "on the job" or "in-service training".  For each, set forth the

18  following:

19      (a)    the nature, substance, and description of the training you received, including

20          the inclusive dates of the period during which you received training;

21      (b)    the name and address of each and any program or specialized school you

22          attended to receive such training;

23      (c)    the dates of attendance of each such program or specialized school;

24      (d)    the nature and substance of the training offered at each such program or

25          specialized school; and

26      (e)    the degree or certificate, if any, that you received from each such program or

27          specialized school.

28

-75-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Response to Interrogatory No. 2

Objections:  (1) compound.  The discoverable information may be determined by examining the following:  (a) transcript of August 6, 2010 deposition of Responding Party; and (2) training records and portion of Responding Party's personnel file produced for inspection on October 21, 2010 pursuant to an agreement between counsel that Plaintiff's counsel would not disclose any such information to anyone except pursuant to a protective order that may be issued by the Court on motion.

### a.    Plaintiff's Contention as to Interrogatory No. 2

As to finding discoverable information by reviewing defendant's deposition transcript: An answer to an interrogatory should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories.  *Scaife v. Boenne* (ND IN 2000) 191 FRD 590, 594; *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton* (D KS 1991) 136 FRD 682, 686.  Further, it is bad faith to advise plaintiff that information is contained in documents that defendant refuses to produce.

### b.    Defendant's Contention as to Interrogatory No. 2

The response is proper.  The information sought is set forth in the deposition transcript which Plaintiff can just as easily get from the transcript, and in the training records reviewed by Plaintiff's counsel that are now outside the scope of the claims Plaintiff has advanced here as discussed numerous times earlier.  Moreover, the Declaration of Gerald Carrigan directly addresses the specific contentions Plaintiff is advancing in his most recent interrogatory answers that were served after this motion was filed.

### 3.    INTERROGATORY NO. 3

State the name and address for each of your employers since high school, setting forth:

1       (a)  the nature, substance, and description of your work duties, including the

2  name, address, title, and role for each individual who supervised you at each such place

3  of employment and the inclusive dates of employment at such place of employment;

4       (b)  the reason for leaving each such place of employment.

5            **Response to Interrogatory No. 3**

6           Objections:   (1) compound.   The discoverable information may be

7           determined by examining the following:  (a) transcript of August 6, 2010

8           deposition of Responding Party; and (2) training records and portion of

9           Responding Party's personnel file produced for inspection on October 21,

10           2010 pursuant to an agreement between counsel that Plaintiff's counsel

11           would not disclose any such information to anyone except pursuant to a

12           protective order that may be issued by the Court on motion.

13       **a.**    **Plaintiff's Contention to Interrogatory No. 3**

14           As to finding discoverable information by reviewing defendant's

15           deposition transcript:  An answer to an interrogatory should be complete in

16           itself and should not refer to the pleadings, or to depositions or other

17           documents, or to other interrogatories.  *Scaife v. Boenne* (ND IN 2000) 191

18           FRD 590, 594; *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton* (D

19           KS 1991) 136 FRD 682, 686.  Further, it is bad faith to advise plaintiff that

20           information is contained in documents that defendant refuses to produce.

21       **b.**    **Defendant's Contention to Interrogatory No. 3**

22           Plaintiff just continues to cut and paste legal contentions without making

23           any effort to explain how the responses are improper. He also ignores the

24           provision of Rule 33 regarding production of records from which the

25           information can be obtained. Moreover, the information about prior

26           employment and duties is in the deposition transcript, and is otherwise

27           completely irrelevant tot eh scope of Plaintiff's contentions in this case.

28

1      **4.** **INTERROGATORY NO. 4**

2      Have you received any professional or technical licenses or certifications?  If

3  so, state:

4      (a)  the type of license or certification, including the date each such license or

5  certification was earned;

6      (b)  the names and address of the organization issuing such license or

7      certification.

8      **Response to Interrogatory No. 4**

9      Objections:  (1) compound; (2) vague and ambiguous as to the meaning of

10      professional or technical certification; (3) Other than to state that Responding

11      Party has received Post certification to become a California Police Officer,

12      this interrogatory exceed the number of interrogatories that may be

13      propounded to a party under Rule 34(a)(1) of the Federal Rules of Civil

14      Procedure.

15      **a.** **Plaintiff's Contention as to Interrogatory No. 4**

16      Since defendant's response was untimely and, thus, defendant has

17      waived all objections, defendant's has waived his objection to the discovery

18      exceeding the number allowed under FRCP Rule 34(a)(1).  However, just to

19      address this issue:  A single question asking for several bits of information

20      relating to the *same topic* counts as one interrogatory.  *Safeco of America v.*

21      *Rawstrom* (CD CA 1998) 181 FRD 441, 445 – subparts count as one

22      interrogatory "if they are logically or factually subsumed within and

23      necessarily related to" primary question.

24      **b.** **Defendant's Contention as to Interrogatory No. 4**

25      This response is appropriate under Rule 33.  The issue of late service

26      of the responses is addressed in A above under good cause.  And, again,

27      there is no excuse for Plaintiff to simply ignore the limitation on number of

28      interrogatory and subparts that may be propounded. A separate question is

1      not a subpart subsumed by the main question, and each subpart is counted as

2      a separate question.  This objection is valid after allowing for all subsumed

3      questions from previously propounded compound interrogatories and

4      compound subparts.  There are more than 25 separate questions by topic just

5      in the previous interrogatories.

6      **5.**    **INTERROGATORY NO. 5**

7      Did the TOWN OF PARADISE or its police department ever distribute to you

8  or require the reading or viewing of any materials (written, computer, video, or audio)

9  concerning:  (1) making arrests or otherwise seizing criminal suspects; (2) serving a

10  search warrant; (3) the use of force (including when force should be used, how much

11  force, techniques and instruments of force); (4) police abuse and misconduct; (5)

12  conducting the search of a residence; and (6) state, federal, and constitutional law?  If so,

13  state for each:

14      (a)    the title, author, and publication date of each such piece of material and the

15          date when such material was given to you to read;

16      (b)    whether or not you actually read or viewed each such piece of material,

17          setting for the date(w) of reading or viewing.

18      •    **INTERROGATORY NO. 6**

19      Have you ever been or are you currently the subject of or the

20  defendant in any inquiry, complaint, disciplinary action, or other administrative action or of

21  a lawsuit, either civil or criminal?  If so, please set forth:

22      (a)    the nature, substance, and description of each inquiry, complaint, disciplinary

23          action, or other action;

24      (b)    the name, address, and telephone number of each complainant/plaintiff.

25      •    **INTERROGATORY NO. 7**

26      At any time, did Plaintiff make any statements (written, verbal, or

27  otherwise) to YOU or anyone in YOUR presence?  If so, please state:

28

1      (a)   the nature, substance, and description of any such statement, setting forth

2            verbatim any verbal statement and providing any written or other recording,

3            or setting forth the contents thereof verbatim, or if you cannot recall the

4            statement verbatim, setting forth its contents as completely and accurately

5            as possible; and

6      (b)   the identity of each person present when each such statement was made.

7            •   **INTERROGATORY NO. 8**

8            Do you contend that the force used against Plaintiff was reasonable

9 and/or necessary to effect his arrest?  If so, state or describe:

10      (a)   all facts and witnesses that support the use of force by your;

11      (b)   each TOWN OF PARADISE police department policy or procedure that

12            authorized such use of force.

13            •   **INTERROGATORY NO. 9**

14            Did you make any verbal or written report, statement, or memorandum

15 to anyone about the INCIDENT and the subsequent investigation of the incident?  If so,

16 set forth:

17      (a)   the nature and substance of each such report, including the date, time, and

18            place you made each such report;

19      (b)   the identity of the present custodian of each such report.

20      •   **INTERROGATORY NO. 10**

21            State whether you were injured (physically, mentally, or emotionally) or

22 sustained any other damages as a result of the incident alleged in Plaintiff's COMPLAINT.

23 If so, set forth:

24      (a)   each part of your body and/or item of property (whether owned by you or

25            another individual or entity) that was injured or damaged;

26      (b)   the nature and extend of each injury and/or damage.

27

28

1

**INTERROGATORY NO. 11**

2   State whether or not YOU have had any conversations or communications
3   regarding the subject matter of Plaintiff's COMPLAINT with anyone in the TOWN OF
4   PARADISE police department, or anyone outside the department, subsequent to the
5   INCIDENT.  If so, further set forth:

6   (a)   the nature and substance of the conversation or communication, including
7   the identity of each individual who participated in each such conversation or
8   communication, and the date and time of each such conversation or
9   communication;

10  (b)   whether the conversation or communication was oral or written, and if
11  written, the identity of the present custodian of such written conversation or
12  communication.

13

**INTERROGATORY NO. 12**

14  Except for this action, has anyone ever filed a civil action against YOU for
15  violation of civil rights during an arrest, detainment, or service of a search warrant,
16  including but not limited to excessive force?  If so, for each civil action:

17  (a)   state the name, address and telephone number of each person who filed
18  the lawsuit;

19  (b)   state the court, name of the parties, and the case number of the civil action;

20  (c)   state the name, address, and telephone number of any attorney
21  representing Defendant;

22  (d)   state whether the action has been resolved or is still pending.

23

**INTERROGATORY NO. 13**

24  What information, if any, did YOU have or know at the time YOU were
25  dispatched to the scene of the INCIDENT?

26

**INTERROGATORY NO. 14**

27  Identify each denial of a material allegation and each special or affirmative
28  defense in your pleadings and for each:  (a) state all facts upon which you base the denial

1   or special or affirmative defense; (b) state the names, addresses, and telephone numbers
2   of all persons who have knowledge of those facts; and (c) identify all documents and other
3   tangible things that support your denial or special or affirmative defense, and state the
4   name, address, and telephone number of the person who has each document.

5        •   **INTERROGATORY NO. 15**

6        Has any investigation into the INCIDENT been conducted by the internal
7   affairs division of the TOWN OF PARADISE or by any other office, officer, employee, or
8   department of the TOWN OF PARADISE?  If so, please state and describe:

9        (a)   the nature and substance of the said investigation, including but not limited
10              to the identify of each individual or witness who was interviewed or consulted
11              during said investigation, setting forth the nature and contents of any
12              statement given by said individual and the outcome of said investigation,
13              including both the decision rendered and any and all disciplinary actions or
14              other consequences that followed as a result therefrom.

15       (b)   any reports, memoranda, summaries, photographs, videos, or audiotapes or
16              physical evidence and/or documents produced, generated, or collected
17              during said investigation.

18       •   **INTERROGATORY NO. 16**

19       Have YOU been the subject of a police department investigation or other
20   investigation or citizen complaint?  If so, please identify and describe:

21       (a)   the date of each incident or complaint, the identify of the complainant, and
22              the subject matter of the investigation;

23       (b)   the outcome of that investigation, including both the decision rendered and
24              any disciplinary action or other consequences that followed as a result
25              thereof.

26

27

28

1

•   **INTERROGATORY NO. 17**

Did Plaintiff strike, threaten to strike, or otherwise offer violence to YOU or the other responding officers?  If so, please describe Plaintiff's conduct and set forth, verbatim or otherwise, the contents of any statements Plaintiff made.

•   **INTERROGATORY NO. 18**

On the night of the incident, on or around the Stratton Market, approximately how many cars were parked and where were they parked?

**Response to Interrogatory Nos. 5 through 18**

Objection, this interrogatory exceed the number of interrogatories that may be propounded to a party under Rule 34(a)(1) of the Federal Rules of Civil Procedure.

a.      **Plaintiff's Contention as to Interrogatory Nos. 5 through 18**

Since defendant's response was untimely and, thus, defendant has waived all objections, defendant's has waived his objection to the discovery exceeding the number allowed under FRCP Rule 34(a)(1).

b.      **Defendant's Contention as to Interrogatory Nos. 5 through 18**

Defendants' written responses were untimely for good cause as discussed under A above.

F.      **DEPOSITIONS OF DEFENDANTS PICKERING AND COOPER**

1.      **Plaintiff's Contentions**

During the deposition of Defendant Pickering, defendant's counsel, Mr. Thorn, instructed his client, Pickering, not to answer *fifty-nine* questions.  During Defendant Cooper's deposition, Mr. Thorn instructed Mr. Cooper not to answer *twenty-seven* questions. Further, during the depositions, Mr. Thorn stated his objections in an argumentative manner and used objections and repeated interruptions to interfere with the deposition process and coach the witness.  Mr. Thorn's behavior was improper, violated Federal Rules of Civil Procedure, Rule 30, and was a disruption of the deposition process

1   that did not allow plaintiff's counsel to take an effective or meaningful deposition of
2   Defendants Pickering and Cooper.

3         Therefore, plaintiff seeks the Court's assistance as to Defendants Pickering
4   and Cooper's deposition asking the Court to rule on objections, instruct the witness to
5   answer and allow the depositions of Pickering and Cooper to resume so that an effective
6   and meaningful deposition of Defendants can be obtained.

7         Further, plaintiff requests that the Court order the following:

8         1.    That the depositions reconvene in plaintiff counsel's office located at 686 Rio
9   Lindo Avenue, Chico, California as additional time is needed to fairly examine the
10  deponent as the examination was impeded by the deponents' counsel (FRCP 30(d)(1).

11        2.    That the depositions be set only when the Magistrate is in the Court and
12  available within reason to take calls regarding disputes.

13        3.    That Defendants pay all expenses for the reconvened depositions and for
14  copies of the transcripts, as well as for the originals. Impeding a deposition subjects a
15  party responsible for the impeding to sanctions (FRCP 30(d)(2).

16        4.    The Defendants pay plaintiff attorney's fees at the rate of $250.00 per hour
17  for the reconvened depositions, as well as two hours of preparation time. Impeding a
18  deposition subjects a party responsible for the impeding to sanctions (FRCP 30(d)(2).

19        5.    At the beginning of each deposition, deposing counsel shall instruct the
20  witness to ask the deposing counsel, rather than the witness' own counsel for
21  clarifications, definitions or explanations of any words, questions or documents presented
22  during the course of the deposition. The witness and his counsel shall abide by these
23  instructions.

24        6.    All objections except those which would be waived if not made at the
25  deposition under Federal Rules of Civil Procedure 32(d)(3)(b) and those necessary to
26  assert a privilege, to enforce a limitation on evidence directed by the Court, or to present a
27  motion pursuant to Federal Rules of Civil Procedure 30(d), shall be preserved. Therefore,
28  those objections need not and shall not be made during the course of the depositions.

1    7.    Counsel shall not direct or request that a witness not answer a question,

2  unless that counsel has objected to the question on the ground that the answer is

3  protected by a privilege or a limitation on evidence directed by the Court (FRCP 30(c)(2).

4    8.    Counsel shall not make objections or statements which might suggest an

5  answer to a witness.  Counsel's statements when making objections shall be succinct and

6  verbally economical stating the basis for the objection and nothing more (FRCP 30(c)(2).

7    9.    Counsel and their witness clients shall not engage in private, off-the-record

8  conferences during depositions or during breaks or recesses, except for the purpose of

9  deciding whether to assert a privilege.

10    10.    Any conferences which occur pursuant to or in violation of guidelines 7

11  through 9 are a proper subject for inquiry by deposing counsel to ascertain whether there

12  has been any witness coaching and if so, what.

13    11.    Any conferences which occur pursuant to or in violation of guideline 9 above,

14  shall be noted on the record by counsel who participated in the conference.  The purpose

15  and outcome of the conference shall be noted on the record.

16    12.    Deposition counsel shall provide to the witness's counsel a copy of all

17  documents shown to the witness during the deposition.  The copies shall be provided

18  either before the deposition begins or contemporaneously with the showing of each

19  document to the witness.  The witness and witness's counsel do not have the right to

20  discuss documents privately before the witness answers questions about them.

21    **2.    Defendants' Contentions**

22       None provided.

23    **3.    DEPOSITION OF DEFENDANT PICKERING**

24       **a.    Page 18, Line 6 through Page 21, Line 9**

25  Q.   Have you been the subject of any disciplinary action?

26  A.   Yes, sir.

27  Q.   And when was the first?

28