DOUGLAS R. THORN (Cal. Bar No. 133521)
Law Office of Douglas R. Thorn
7601 Watson Way
Citrus Heights, California 95610
Telephone – (916) 735-9910
Email – drthorn@surewest.net

Attorneys for Defendants Town of Paradise, Gerald Carrigan, Robert Pickering and Timothy Cooper.

UNTIED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD ANTHONY FUNK,<br><br>   Plaintiff,<br><br>   v.<br><br>TOWN OF PARADISE, PARADISE POLICE DEPARTMENT CHIEF GERALD CARRIGAN, PARADISE POLICE DEPARTMENT OFFICER ROBERT PICKERING, PARADISE POLICE DEPARTMENT OFFICER TIMOTHY COOPER, and DOES 1 through 100, inclusive,<br><br>   Defendants. | Case No.  2:09-CV-01000-MCE-KJM<br><br>REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT OF MAGISTRATE JUDGE'S RULING<br><br>[Local Rule 303] |

REQUEST FOR REVIEW

Pursuant to Local Rule 303, Defendants request that the Court reconsider the Magistrate Judge's May 13, 2011 order:

1. The magistrate erred in denying Defendants' motion to compel Plaintiff to discharge his mandatory duty under Rule 26, which requires Plaintiff to, among other things, timely disclose and *make available for inspection and copying as under Rule 34 the documents and other evidentiary material . . . bearing on the nature and extent of injuries suffered.*[1]

Plaintiff seeks in excess of six million dollars in damages based upon his claim that he suffered permanent disability to his left elbow because Officers Pickering and Cooper used excessive force to effect his arrest. His initial Rule 26 disclosures identified one doctor, Dr. Helmuth Jones, and he only identified "medical record" and produced a few incomplete pages of medical records and billings. On April 8, 2010, more than a year ago, Defendants propounded interrogatories and inspection demands to Plaintiff to, among other things, verify that his disclosures were complete and accurate. He thereafter served an interrogatory answer identifying an additional doctor not listed in his initial disclosure and responded to the request for the materials bearing on the nature and extent of his alleged injuries with a work product objection without producing anymore of his medical records that he has since acknowledged to exist.

<u>Prior Efforts to obtain Compliance</u>.

Defendants eventually filed three discovery motions to obtain, among other things, a true and complete answer to the interrogatory regarding the identity of his treating physicians and to obtain his medical records and other materials bearing on the nature and extent of his injuries. The first two motions were dropped without prejudice to review discovery produced by Plaintiff. In a good faith effort to advance the discovery process without court intervention, Defendants' attorney offered to subpoena the medical records if Plaintiff would provide a release (which would presumably include the two doctors previously disclosed). Plaintiff did provide a release, but instead of just the two doctors identified in his prior sworn interrogatory answers, the release now contained the name of *four doctors and one hospital not listed in his prior disclosures or sworn interrogatory answers and for which no*

---

[1] F.R.C.P. 26(a)(1)(A)(iii).

-1-

REQUEST FOR REVIEW

*documents had been produced.* When asked about the discrepancy, Plaintiff's counsel failed and refused to explain the discrepancy or to correct the prior sworn interrogatory answers and incomplete disclosures. Further meet and confer ensued.

On January 7, 2011, the last meet and confer conference between counsel, Plaintiff's counsel agreed to provide Plaintiff's medical records and to, once again, review and correct the errors in Plaintiff's prior sworn discovery responses and incomplete production. Some additional records started trickling in more than a month after the meet and confer, with the promise that more records were forthcoming. No additional records were provided before the motions were filed, but some hospital records were served after the motions were filed. No corrected interrogatory answer or supplemental disclosure was served regarding the subject.

<u>Magistrate's Ruling on Defendants' Motion</u>. A hearing on Defendants' motion to compel was held before the magistrate on Wednesday, May 11, 2011. The transcript of the hearing contains the following relevant discussion and ruling that Defendants ask the District Court to review for error:

THE COURT: Well, I started with 6, so I'm going to come to No. 2.

MR. THORN: I assumed they were interrelated since he's using them for that purpose. That's what's been difficult.

THE COURT: All right. As to No. 6, Mr. Baumbach, you're going to have to do your verification. No. 2, contact information, all treating doctors, or medical providers covering five years prior to the incident. The most recent response mentioned Drs. Jones and Drs. Bauer (phonetic). The plaintiff has done a -- has provided a HIPAA release that's dated November 9, 2010 that would give up the records at Feather River Hospital, and the records of Drs. Jones, Vance, Parrot, and Cummings (phonetic) Who else is there?

MR. THORN: I don't know. I mean, since he's only given us these two, that was the problem with the HIPAA is who are these doctors, what are they for, and he's only --

THE COURT: Do you not have that HIPAA release of November 9th?

MR. THORN: I do have the HIPAA release, but --

THE COURT: Okay. So it's not only these two, it's Drs. Jones, Dr. Bauer, Dr. Vance, Dr. Parrot, Dr. Cummings, and the Feather River Hospital. Are there others that you think I've not mentioned?

MR. THORN: I don't know, Your Honor. I don't know as --

THE COURT: Mr. Baumbach, are there?

-2-

REQUEST FOR REVIEW

MR. BAUMBACH: I don't believe so. Let me -- can I explain how this transpired?

THE COURT: No. I want to know what still has to be produced.

MR. BAUMBACH: Well, we are -- as soon as we learned that the defense was not going to send a copy service out to copy the medical records, which in every case I've ever dealt with is the way it's done, that we were now required to obtain those and transmit them to the defense. We started ordering records. We didn't quarrel with them. We just started ordering records. And as the records came into us, we sent them to Mr. Thorn. So, we have submitted all the records that we have. I believe there may be one doctor record that is still coming. I saw a little thing come over my desk the other day that they wanted $15 or something like that, which we sent to them to get the records. And all the records that we know of have been sent and provided.

MR. THORN: We don't have Dr. --

THE COURT: All right.

MR. BAUMBACH: But we will prepare verification to that effect as well.

THE COURT: All right, 15 days for that verification.

MR. BAUMBACH: Okay.

THE COURT: All right. Now, as to this --

MR. THORN: Does a verification --

THE COURT: -- quarrel about --

MR. THORN: May I -- will the verification list all the records that they claim have been provided, because Parrot, Cummings, none of that stuff has been provided. The diagnostic
studies have not been provided.

THE COURT: Well, I'm about to get to this issue about copy -- he's given you the HIPAA release, and if he has the documents in his possession then he can provide you what he
has in his possession.

MR. THORN: Which -- and they were due --

THE COURT: But if you're asking him to go to the hospital and start copying records for you, that's your job.

MR. THORN: Actually, Your Honor, I would respectfully disagree with that. I asked for his Rule 20 – he intends to use them to prove his damage claims. I asked for them. This HIPAA release came about in an effort to try and get off the dime here because I had asked for them months earlier, and I got this objection, attorney work product, which he's saying now was just a work product objection that he raised to prevent waiver. So if you take that out of his response, he didn't respond to request No. 6 for the documents.

THE COURT: All right. He --

MR. THORN: And he's -- 1

-3-

REQUEST FOR REVIEW

THE COURT: He can give you whatever documents are in his possession. If you want to go get documents from the Feather River Hospital, or from these doctors, you'll have to do that, and you'll have to do that at your expense. You have the release from him. It's your job to go get the documents and it's your job to do the copying.[2]

Plaintiff has now provided the supplemental interrogatory answer he was ordered to provide, *and it contains the names of eight doctors and not one hospital[3]*. This supplemental answer is troubling for several reasons. First, there were doctors to disclose that should have been disclosed in Plaintiff's initial disclosure well over a year ago, and that should have been disclosed in the first and second supplemental disclosures he made in response to Defendants earlier demands; and the doctors should have been disclosed in Plaintiff's first sworn answer to the interrogatory more than a year ago, and the three sworn supplemental answers to the interrogatories he served pursuant to Defendants' earlier demands. There is absolutely no excuse for this evasive and highly prejudicial behavior.

And the magistrate's ruling that it is Defendants' obligation to obtain the records from the doctors is error and compounds the prejudice. First, of the eight doctors just disclosed, *only two are listed in the HIPAA release Plaintiff provided.* That is why Defendants asked for clarification about who the doctors are and why the records should be obtained and why they had not been previously identified and disclosed. It is also why Rule 26 places the duty and burden on Plaintiff to obtain and produce the records. Only he has the information.

Second, Plaintiff's latest sworn testimony does not identify Feather River Hospital even though he sought treatment there for his alleged injuries in this case and produced some but not all of the Feather River Hospital records after these motions were filed. His attorney even identifies Feather River Hospital as a responsive treater to the magistrate in the transcript cited above. *Why was Feather River Hospital omitted from all of the prior sworn answers to the interrogatory, including the one just ordered by the magistrate*?

---

[2] *Transcript* beginning at 25:12

[3] Decl. of Douglas R. Thorn

-4-

REQUEST FOR REVIEW

Finally, the identical issue about duty to obtain medical records has come before another district court in *Kifle v. Parks & History Association*.[4] In that case, plaintiff claimed to have suffered, among other damages, emotional distress from defendant's allegedly discriminatory acts. And in that case, as in this case, defendant propounded interrogatories to plaintiff to identify her treating health care providers and inspection demands to obtain plaintiff's medical records and other documents relating to the damages she allegedly suffered as a result of defendant's allegedly discriminatory acts. In response to the discovery requests, plaintiff simply produced medical releases for some of her treating doctors and indicated in her written responses that she did not poses the records sought by the inspection demands. On defendant's motion to compel, the district court rejected plaintiff's tactics as evasive and non-compliant with her Rule 26 obligations as the magistrate should have done in this case. In that case, the district court held that plaintiff has control of her medical records because she can obtain them on demand, as Mr. Funk has control of his medical records and can obtain them on demand. The district court also correctly read and applied Rule 26 to place the burden on plaintiff to identify and produce the medical records and documents bearing on the nature and extent of her injuries at her expense and correctly ruled that she could not shift that duty and burden to defendant with a release of the medical records.

In summary, the magistrate erred in holding that it was Defendants' burden to procure Plaintiff's medical records even if Plaintiff provides a release. It is, and always remains, Plaintiff's Rule 26 burden to produce the documents and evidentiary materials *in his possession, custody, or control* that bear on the nature and extent of his alleged injuries. And even if that were not so, the release provided here is as evasive as the three disclosures and four sworn answers to interrogatories Plaintiff has served thus far in the case. Defendants cannot obtain the medical records using the release because it does not contain authorization for *all* of the doctors now listed in Plaintiff's latest sworn interrogatory answer. Rather, it contains the name of only two doctors listed in the most recent sworn interrogatory answer. As such, the magistrate has effectively precluded Defendants from obtaining all of the medical records that bear on the nature and extent of Plaintiff's alleged injuries because the release is incomplete.

---

[4] 1998 U.S.Dist.LEXIS 22250 (D.C. 1998).

-5-

REQUEST FOR REVIEW

Defendants respectfully ask the District Court to overrule the magistrate and order: (1) Plaintiff to serve yet another, fifth amended interrogatory answer that includes Feather River Hospital and any other doctors that have been omitted; (2) compel Plaintiff to serve yet another, fourth supplemental disclosures that complies with Rule 26 requirements to identify the health care providers identified in his fifth supplemental interrogatory answer and produce all of the documents and evidentiary material bearing on the nature and extent of his alleged injuries; (3) provide a sworn declaration explaining the reason that the doctors and hospital listed in the release provided to Defendants are not included in the fifth supplemental answer to the interrogatory; (4) compel Plaintiff to marshal a complete set of his medical records (including diagnostic studies, X-rays, MRI's) and provide them to Defendants' attorney within 10 days at his expense; (5) and award Defendants monetary sanctions for bringing the motion in the amount of _____

     2.     The magistrate erred in ruling that Defendants were required to obtain a protective order before counsel could instruct the deponent not to answer a question such as to require the officers to submit to a second depositions and ordered Defendants to pay monetary sanctions. The transcript of the hearing provides:

> THE COURT: If you think you're entitled to a protective order you have an obligation to timely move for a protective order.
>
> MR. THORN: I think may not have spoken clearly. What I suggested is I wanted to get a protective order. He wanted a protective order on certain things and so we agreed to move forward jointly. That's how that started. I didn't condition it on his agreement.
>
> THE COURT: Well, what are you doing in the middle of a deposition telling witnesses not to answer a question because you don't have a protective order?
>
> MR. THORN: To seek a protective order.
>
> THE COURT: Well, why didn't you do that before the deposition?
>
> MR. THORN: Well, I didn't know what question he was going to ask before he got to the deposition, and I can't foresee what he's going to do or ask.
>
> THE COURT: Well, my point is, is you don't have the right to tell witnesses not to answer a question just because you don't have what it is that you want in the way of a protective order.

-6-

REQUEST FOR REVIEW

MR. THORN: Rule 30 provides that you can instruct a witness not to answer in order to seek a protective order. The timing of the protective order is with the --

THE COURT: What it says is you can instruct a witness not to answer if it involves a privilege, or if it's to enforce a protective order. If you had a ruling that counsel was prohibited from going into a certain line of questioning, then you can enforce that ruling that way, but you don't have the right to be doing what you've been doing.

The magistrate erred. Rule 30 does not require a pre-existing protective order to be in place before counsel may instruct a witness not to answer a question. The rule provides that instruction may be given to present a motion for a protective order under Rule 30(d)(3).[5] The instructions in this case related to the manner in which the deposition was being conducted to annoy, embarrass, and oppress the deponent with questions about socials security numbers, spouses and their places of employment, dependent children, and other similar question regarding matters outside the scope of Rule 26. In addition, tirades, criticism and name calling directed at counsel in front of clients, repeated misstatement of the witness's testimony, asking questions over and over, and presenting exhibits for questioning that had not been previously disclosed were all part of the decision to instruct so that a protective order could be obtained.[6] Shortly after the start of the start of the first deposition (Officer Pickering) where this type of conflict began, counsel agreed to proceed as follows:

```
20:12  MR. BAUMBACH: You're telling me what I need to
20:13  do in this deposition. I'm asking questions.

20:14       MR. THORN: You asked me what you'd like me to
20:15  do.

20:16       MR. BAUMBACH: I suppose the way we're going to
20:17  do this now is that I'm going to ask the questions and
20:18  you're going to instruct him not to answer and, then, I'm
20:19  going to bring a motion to compel?

20:20       MR. THORN: And we'll bring both of them at the
20:21  same time.

20:22       MR. BAUMBACH: That's the way we'll do it.
```

---

[5] F.R.C.P. 30(c)(2); *Quantachrome Corp. v. Micrometrics Corp*, 189 F.R.D. 697 (1999)( "[i]f counsel . . . truly feels that a deposition is being conducted in "bad faith or in such manner as to unreasonably annoy, embarrass, or oppress" the deponent, counsel may instruct the witness not to answer or may halt the deposition. Fed.R.Civ.P. 30(d)(3). Counsel may do so, though, only if he intends to move for a protective order under Rule 30(d)(3)")

[6] See, e.g., *W.R. Grace & Co. v. Pullman, Inc.*, 74 F.R.D. 80 (1977)( The safeguards contained in Rule 30(d), Fed.Rules Civ.Proc. protect against bad faith discovery practices which would include frequent or persistent inquiry into matters outside the permissible scope of discovery allowed pursuant to Rule 26(b)(1)")

-7-

REQUEST FOR REVIEW

Defendants want to be clear that they accept that these depositions were not model depositions and were contentious, but procedurally in terms of the instructions and protective orders it was agreed that the deposition would proceed rather than be temporarily adjourned as authorized under Rule 30. And Defendants did seek the protective orders first in a motion on September 1, 2010 (Docket No. 17) shortly after the transcripts became available and could be reviewed along with the other discovery disputes for which a motion was brought at that time. That motion was withdrawn on agreement of counsel to meet and confer further regarding additional discovery eventually provided by Plaintiff (Docket No. 20). The motion was eventually refiled, along with Plaintiff's motion, several months later (Docket Nos. 22-23). And the magistrate agreed that the information for which the witnesses were instructed not to answer was not subject to discovery – personal information, medical and psychological information, home addresses and phone numbers, names and contact numbers of family members, medical and psychological information, medical, disability, and life insurance information, as well as non-excessive matters from personnel and any IA files other than for the Funk, Schumacher, and Baltierra matters.[7] That is the very information for which Defendants sought protection from disclosure. The deponents were not instructed not to answer questions about these matters or excessive force issues, and Plaintiff did not seek these documents before deposing the witnesses. The fact that he obtained documents subject to protective order later, without seeking the documents before taking the depositions, is not good cause to order a second deposition, particularly when the witnesses were not instructed not to answer questions about the alleged excessive matters anyway. At the very least, it is error not to restrict the second deposition to the new material.

Moreover, Plaintiff's counsel's demands for reconvening the depositions were opposed by Defendants and not accepted by the magistrate. His meet and confer letter demanded, among other things, that Defendants pay to reconvene the deposition, including all transcript fees, attorney fees to prepare for second deposition; and that Defendants agree to waive or alter the procedural requirements in Rule 30 by giving deponents various instructions contrary to the rules and that Defendants agree to

---

[7] Order at ¶ 1.a

-8-

REQUEST FOR REVIEW

alter the Rule 26 requirements to disclose documents being used to support Plaintiff's claims "either before the deposition begins or contemporaneously with the showing of ach document to the witness." None of this was adopted or ordered by the magistrate and provided substantial justification to oppose law and motion.

The example cited by the magistrate concerning the marking of exhibits was an attempt to prevent Plaintiff's counsel from oppressing the deponent by surprising him with photos that he was required to disclose before the deposition but did not disclose as mandated by Rule 26. That is the type of objection that may be waived if not asserted timely, and the type of conduct that would warrant a protective order and sanctions itself.[8] The vast majority of the remaining issues raised in the motion were not accepted or commented upon by the magistrate either, such as Plaintiff's contentions that the objection, "asked and answered" was obstructive, but there is not an anymore succinct way to preserve the objection and Plaintiff did not argue that the objection was not well taken..

In summary, the magistrate erred in ordering Defendants to both answer dozens of interrogatories (when subparts are counted) and submitting to an unlimited second deposition while upholding the basis for Defendant's instructions to the witnesses so that a protective order could be obtained pursuant to an agreement of counsel on the record at the deposition. And it was error not to award monetary sanctions to Defendants for prevailing on their motion when there was no justification offered for not answering the interrogatory truthfully the first time, or second time, or third time, and now, for the fourth time; and no justification for not disclosing all of the doctors or producing the medical records the first time, or the second or third time. It is error to award sanctions on the motion when there was substantial as opposed to complete justification under the circumstances and Defendants ask for the following relief from the District Court: (1) for an order overruling the magistrate's order for Defendants Cooper and Pickering to submit to a second deposition, or to limit the scope of the second deposition to a maximum of two hours regarding the limited personnel files ordered produced under a protective order; and/or (2) overruling the magistrate's order for Defendants to pay monetary sanctions

---

[8] F.R.C.P. 37(a)(3)(A).

-9-

REQUEST FOR REVIEW

on the grounds that they were substantially justified in seeking and prevailing on limiting discovery pursuant to the instructions as provided in Rule 37.

Date: May 25, 2011  /s/ Douglas R. Thorn
Douglas R. Thorn
Attorney for Defendants Town of Paradise, Gerald Carrigan, Robert Pickering and Timothy Cooper